WILLIAM MᶜKINNEY, *et al.*, v. CINDERILLA STEWART.

*Error from Johnson County.*

DESCENTS AND DISTRIBUTIONS.—On the 31st day of October, A. D. 1862, F. M. McKinney died, leaving a mother and two brothers, but no wife, child or father. *Held*: that the mother, the wife of the deceased father, inherits one half of her deceased son's estate. *Comp Laws*, 470, §§ 18, 19 ; *id.*, 469, § 5 ; *id.*, 697, § 73.*

This was an action in ejectment, brought by the defendant in error against the plaintiffs in error, to recover one-half of the estate of F. M. McKinney, deceased, she being the mother, and they being brothers of the deceased. The cause was tried before the court, and judgment given for plaintiff below, defendant in error, and the case is brought here that the judgment may be reviewed. The opinion contains a fuller statement of the facts of the relationship of the parties.

*DESCENTS AND DISTRIBUTIONS.—The statute on descents and distributions, cover the entire subject of inheriting, and in this abrogates the common law.

DEFINITIONS: HEIR.—An heir is one who succeeds to the estate of a deceased person.

DESCENTS: WIFE'S INTEREST.—The interest which a wife takes in her deceased husband's estate, under the statute, [Comp. L., 469, § 5; p. 697, § 7,] is an absolute and unqualified property.

*Holmes & Black* and *A. S. Divinney*, for plaintiff in error.

*Allen & Gill*, for defendant in error.

*For plaintiff in error*, it was contended:

1. The estate of dower still exists by statute of Kansas, although by act concerning "descents and distributions," approved February 8th, 1859, [*See Stat.*, '62, 471, § 29,] abolished the estate by dower and courtesy. An act passed subsequent thereto, entitled "an act relating to dower," approved February 27th, 1860, [*Id.*, 478, § 1 *and following*,] revives the estate of dower. Section two of this act gives the widow six months from the death of her husband to elect; to take under section one, one-third for life, or take under the act relating to "descents and distributions," or an act to "protect the rights of married women," approved February 7th, 1859. By a subsequent act, entitled "an act for the relief of widows," approved May 21st, 1861, [*id.*, 902,] it is provided: "If a widow fail to elect within six months, she shall be presumed to have elected to take under the act to 'protect the rights of married women.'" Construing all these acts together, the act concerning dower, passed over a year subsequent to the act of "descents and distributions," and the act to "protect married women," the estate of dower abolished by legislature, 1859, was revived in 1860, and the provisions allowed her by law, and which now elects for her, is an estate in lieu of dower, and is characterised by all its qualities, conditions and incidents. This view is farther confirmed by the act "concerning dower" [§ 6, *same statutes*, 479,] which provides that she may take dower as in section one, free of debts, or under section four, subject to debts. Whatever the quantity or

quality of the estate may be, it is a dower, or a provision in lieu of it, and the conditions of its existence must depend upon " marriage seizure, in fact or law, during coverture, and the death of the husband." One of the essential incidents of the estate is, that the widow acquires no new freehold, but her seizure is a continuation of her husband's. [1 *Pick.*, 317.] She can only recover upon the strength of her husband's title. She must show a seizure in him during coverture. [15 *Barb.*, 485.] The defendant in error claims one-half of the land in controversy as the widow of the decedent's father. But he was never seized, in fact or in law, during coverture.

2. But if the court should hold that the estate of dower, *as such*, does not exist by the law of Kansas, then we submit that the estate, or portion, going to a widow of a deceased husband by the fifth section of the law of "descents and distributions," must have been one of which the husband had a legal or equitable estate at some time during the marriage.

3. It is the duty of courts to construe every part of an act, and give application to each part so as to harmonize each part with every other part, if possible. We submit that sections nineteen and twenty of the act concerning " descents and distributions " is in harmony with section five of the same act, so as to give full force to the terms of section five.

4. The obvious intent of section nineteen, fairly construed, is, that in failure of wife or children, the estate should follow the father's line to the exclusion of the mother and her line. Can it be conceived that the legislature should in this section exclude the mother and her line, and confine it to the father and his line, when in many cases, and the one in controversy, if the rule contended for by defendant in error be correct, the first step

it takes, it takes one-half the estate from the father and his line and casts it upon the mother and her line.

5. The obvious intent is, on the failure of wife or children, to run the blood of the father's line of the last person who died seized of the estate. To give the interpretation claimed by the defendant in error, one-half the estate in a certain contingency would pass to a stranger to the blood of the deceased, and possibly all might go to a stranger to the blood of the person last seized.

6. The language: "If the father be previously dead, the portion which would have fallen to his share by the above rules [§ 18] shall be disposed of in the same manner as though he had outlived the intestate and died in the possession and ownership of the portion thus falling to his share," is restrained by the remaining portion of the section.

7. "And so on through each ascending ancestor and his issue, unless heirs are sooner found." The plain import of this language distributes the estate to the issue of any dead male ascending ancestor in whom it may vest as though *in esse*. Thus interpreted it gives all parts of the act full force, and harmonizes sections five and nineteen.

8. But further, section twenty fixes and interprets section nineteen: "If heirs are not found in the male line, the portion thus uninherited shall go to the mother of the intestate and to her heirs." There is certainly but one meaning to this section. There must be a failure of issue in any one of the ascending ancestors of the male line of the decedent before the estate can be cast upon the mother of the intestate and follow her line.

9. The foregoing view of the law harmonizes all the acts bearing upon this question. But the view maintained by defendants in error makes section nineteen and

twenty contradict section five of the act of "descents and distributions," and also renders inoperative and void sections two, six and seven of the dower act. [*Comp. L.,* 478, 479.] Elections made by provisions of sections two must be made within six months from the death of her husband, and section seven, within same time, the portion claimed by defendant in error is not as heir of the son who died seized, but of her deceased husband who had been dead over twenty years before the death of the son, who died seized of the estate in controversy.

10. Subsequent legislation confirms the view submitted by plaintiffs in error. [*Gen. Stat.,* '68, 394.] The legislature makes the estate in the contingency stated in section nineteen [*Stat.,* '62,] by sections twenty and twenty-one of statute of 1868, go to the parents instead of father, as in statute of 1862.

*Allen & Gill, for defendant,* maintained:

1. "An act concerning descents and distributions," approved February 8th, 1859, [*Comp. L.,* 468–472,] is the law governing this case.

It was the law in force at the time of F. M. McKinney's death, and provides specially for this state of things, and must, therefore, control to the exclusion of all others.

2. This law, when applied to the case, provides that Mrs. Stewart, defendant in error, on the death of her son, F. M. McKinney, was entitled, in fee simple, to the one-half interest in said estate, while plaintiff's in error are entitled to a one-fourth each, for

*a*) Section five of this act reads that on the decease of the intestate, the wife shall be entitled, in fee, to the "one-half in value of all the real estate in which the husband, at any time during the marriage, had a legal or equitable interest," etc.

*b*)   Section sixteen is to this effect: " Subject to·the rights and charges hereinbefore contemplated; the remaining estate   *   *   *   shall descend in equal shares to his children."

*c*)   And section eighteen is to this effect : " If the intestate leaves no issue, the whole estate shall go to his wife, and if he leaves no wife nor issue, the whole shall go to his father."

*d*)   And section nineteen : " If his father be previously dead," and that is the case here, " the portion which would have fallen to his share by the above rules," and what is that portion but the whole? "shall be disposed of in the same manner as though he had outlived the intestate and died in the possession and ownership of the portion thus falling to his share, and so on through each ascending ancestor and his issue, unless heirs are sooner found."

*e*)   Now compare the facts with this law, as above recited.   Take section nineteen, using the prior sections in unfolding its meaning, and is there any doubt but that F. M. McKinney's real estate is to be distributed in this wise : one-half to his mother, Cinderilla Stewart, and the remaining half, in equal shares, to the two brothers, William and John McKinney?   The only question is : "How would the estate descend, ' by the above rules,' were it really the estate of the father ?"

3.   It was contended that the last clause of section nineteen, shows an intention of the legislature to return to the old common law of decents.   Suppose, then, it be the meaning of "and so on through each ascending ancestor and his issue, unless heirs are sooner found," that the blood of the ancestor should be strictly followed up, and that this clause indicates a return to common law rules of descent, and you have made this subordinate,

appended clause contradict and absolutely control the body of this (nineteenth) section, as well as the spirit of the entire act—for, says the main clause of section nineteen, that in the case of the previous death of the father, " the portion which would have fallen to his share by the above rules shall be disposed of in the same manner as though he had outlived the intestate and died the owner," etc. Besides several cardinal rules of interpretation are violated by this sort of construction.

*a*)   " The whole statute must be taken together, and such an interpretation adopted as will make all consistent." *Vattel's Rules; Sedgw. Stat. and Const. Law*, 237.

*b*)   " Whenever the intention can be discovered it ought to be followed, although such construction may seem contrary to the letter." *Sedgw. Stat. and Const. Law*, 232; 4 *Comst.*, [*N. Y. R.*,] 140 ; 15 *Johns. R.*, 358.

*c*)   Again: " Words are to be taken in their natural and most obvious import, without resorting to subtle or forced constructions." *Story J. in* 1 *Wheat.*, 326 ; *Bronson J. in* 20 *Wend.*, 555; 1 *Kent*, 462; *Sedgw. Stat. and Const. Law*, 260.

*d*)   In arriving at the intention of the legislature we are to view the history of legislation on the subject, as well as look to acts *in pari materia*. [*Cok. Litt.*, 381; 1 *Kent*, 461.] Is it not seen in Kansas legislation that the object is to enlarge woman's rights in real estate and bring her to a par with man in this regard ?

Is it not absurd to so interpret this section (and that by means of a subordinate clause) as to deprive her of that which the legislature so assiduously strove to invest in her. But Vattel's rule is that " Every interpretation that leads to an absurdity ought to be rejected." There is one rule applicable in this case, viz : " That if the statute is plain and unambiguous, there is no room for construc-

tion or interpretation." *Sedgw. Stat. and Const. Law*, 231.

4. The objection made below, " that a wife cannot be an heir," has no bearing in this case, if it were even true in point of law. She can be an heir. An heir is simply " one upon whom the law casts an estate immediately on the death of the ancestor." 2 *Blackst.*, 201; " An Heir— One who inherits."— *Webster's Speller and Definer.*

*By the Court*, VALENTINE, J.

One question only is involved in this case. On the 3d day of October, A. D., 1862, F. M. McKinney died, leaving a mother and two brothers, but no wife, children or father. It is admitted that the two brothers inherit one half of their deceased brothers estate, but whether the mother or the two brothers inherit the other half of the estate is the question now presented for our consideration.

DESCENTS AND Distributions. Under section eighteen of the act relating to descents and distributions, [*Comp. Laws*, 470,] the father would have inherited the whole of his deceased son's estate if he had outlived his son; but having previously died, the estate under section nineteen of the same act, goes to the heirs of the father. The two brothers do not inherit because they are brothers to the deceased, but because they are heirs of the father. The question is reduced then simply to this: who are the heirs of the father? It is admitted that his two sons are heirs, and that they inherit one half of the estate, but is his wife an heir? The statute gives her one half of all her deceased husband's estate, real and personal, legal and equitable, [§ 5, *Comp. Laws*, 469; § 7, 697,] not merely a

right of dower, but the absolute and unqualified property. It is urged that she cannot be made an heir at all, and particularly not in this case, as the husband was never seized of the property in controversy. It seems to us scarcely necessary to say that this is purely a question of statutory law, [2 *Blackst. Com.*, 211,] and that the statute of this state has covered the entire grounds; and, therefore, that the common law authorities and the decisions and statutes of other states with respect to who are heirs, or who inherit, have but little application in this state. The statute may make any person an heir. An heir in law is simply one who succeeds to the estate of a deceased person. In this sense the wife is an heir of her deceased husband, and when her deceased son has no wife, child, or father, she is his heir. She succeeds to the estate of her son in the same manner, as though her husband had outlived the son, had inherited the son's property and then died. If she makes no election under the act for the relief of widows, [*Comp. Laws*, 902,] within six months after that time, then she takes under the act relating to married women.

The judgment of the court below is affirmed.

All the justices concurring.