LUKE OVERMAN v. SARAH A. HATHAWAY.

TITLE—*Action For, Against Wife.* The defendant was and is the wife of·H. H. owned a piece of land, which·he contracted to sell and convey to O. The purchase-money was paid by O. to H. and wife; and H. put O. into complete possession of the property, and permitted him to make lasting and valuable improvements thereon. The defendant was at all times cognizant of the contract of sale, and of all the other facts of the case. Afterward she refused to join her husband in conveying such land to O. *Held,* That O. may maintain an action against her for the purpose of procuring a complete and perfect title to the property.

*Error from Leavenworth District Court.*

APRIL 30, 1881, defendant *Hathaway* had judgment in the district court against plaintiff *Overman,* who brings the case here. The opinion states the facts.

*Lucien Baker,* for plaintiff in error.

*Thos. P. Fenlon,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was brought by Luke Overman against Sarah A. Hathaway, for the purpose of procuring a complete and perfect title to a certain piece of land situated in Leavenworth county, Kansas, and containing two and one-half acres. The action was tried by the court below without a jury, and the court made the following findings and conclusions of fact and of law, to wit:

FINDINGS OF FACT.

"1. Prior to 1879, John F. Hathaway and the defendant were, and they now are, husband and wife, living and cohabiting as such.

"2. In the spring of 1879, said John F. Hathaway made a contract in writing, which was not signed by the defendant or anyone for her, by which he obligated himself upon the payment of $35 to him by the plaintiff, to convey to the plaintiff the two acres of land in the petition mentioned. Twenty-five dollars of the purchase-money was paid by the plaintiff to the said John F. Hathaway directly, and the remainder

thereof was paid by the plaintiff to the defendant for the said John F. Hathaway about the time of the purchase of said land by the plaintiff, with the consent of said Hathaway and without objection by the defendant. The plaintiff went into possession thereof, made valuable improvements thereon, and still holds possession of the same.

"3. Subsequent to the purchase above mentioned, and prior to September 21, 1880, the plaintiff made a verbal agreement with the said John F. Hathaway for the purchase of the one-half acre mentioned in the petition, for the consideration of $10, which one-half acre adjoins the two acres above mentioned, and immediately took possession thereof and inclosed the same with a fence. The purchase-money for the one-half acre was paid by the plaintiff by work for him upon and about his residence, under the direction sometimes of the said Hathaway, and sometimes under the direction of the defendant.

"4. The said two and one-half acres, at the time of the purchase thereof by the plaintiff, were the property of said John F. Hathaway in his own right, and he held the title to the same, and they constituted no part of his homestead or that of his family.

"5. The defendant, at the time of the sale of each of the tracts mentioned, knew of the agreements between the plaintiff and the said John F. Hathaway for the purchase and conveyance of the same, and made no objection thereto until after the purchase-money had been fully paid, when she refused to join the said John F. Hathaway in the execution of a conveyance of the property to the plaintiff.

"6. On September 21, 1880, the said John F. Hathaway, alone, and without his wife joining therein, executed, acknowledged and delivered to the plaintiff a general warranty deed for the said two and one-half acres, which deed was received and placed on record by the plaintiff, knowing that the defendant not only had not executed or acknowledged the same, but that when requested so to do had refused."

#### CONCLUSION OF LAW.

"The defendant is entitled to a judgment against the plaintiff for costs."

We think the court below erred in its conclusion of law. The facts as found by the court below, we think would authorize a judgment in favor of the plaintiff and against the

defendant; and they certainly do not place the defendant in any very enviable position in an equitable proceeding such as this is.   The defendant consented to the contracts made for the sale of the land, for she had full and complete knowledge of the same and made no objection thereto, although under the circumstances it was her duty to object if she did not approve such contracts.   She consented to her husband's putting the plaintiff in the possession of the land under the contracts; because she stood by, saw the same done, and made no objection thereto.   She consented to the plaintiff making lasting and valuable improvements upon the land under and by virtue of such contracts; because she stood by and saw it all done without making any objection thereto.   She consented to the plaintiff paying the purchase-price for the land, or a part thereof; because she received it herself for her husband without objecting thereto.   She also consented thereto, because a portion of the purchase-price of the land was paid by the work of the plaintiff upon the homestead of the defendant and her husband, which work was for the mutual benefit of herself and husband, and was done, partly at least, under her direction, and at all times she was perfectly cognizant of all the circumstances of the case.   After thus acquiescing in and consenting to all these things; after the payment of all the purchase-money; after receiving the benefit of a portion of it at least, by the work and labor of the plaintiff upon her homestead under and by her direction, can she then, for the first time, object to the transfer of title to such land, by refusing to join her husband in a conveyance of the same, or otherwise, and thereby defeat the plaintiff in procuring a perfect title to his land?   We think the acts and conduct of the defendant constitute an implied contract to transfer to the plaintiff all her interest in the land; and she is certainly now estopped by such acts and conduct from claiming any interest in the land herself.   If she is not so estopped, she will be permitted to perpetrate a fraud upon the plaintiff — a kind of wrong which courts of equity never encourage, and never even allow, if they can prevent the same.   The plaintiff undoubtedly had the right to suppose

from the acts and conduct of the defendant that she would unite with her husband in conveying to him the land in controversy whenever he had performed all the conditions precedent on his part, and she has no right now to object. It is a well-established principle in equity, that if a person having an interest in land or other property permit or encourage a person to buy the same of another, the purchaser, under such circumstances, will obtain a good title thereto as against the person having such interest therein. (*Smiley v. Wright*, 2 Ohio, 506, 510, and authorities there cited; *Storrs v. Barker*, 6 Johns. Ch. 166;) and this rule prevails against *femes coverts*, as well as against other persons; (same authorities.) And it certainly prevails under the statutes of Kansas, which place married women in about the same condition as married men. The defendant, at the time of the contracts of sale, had an interest in the land in question. It is true that her interest in such land was only contingent and inchoate; but still it was an interest which might at some time become absolute and complete. (*Madigan v. Walsh*, 22 Wis. 501.) Her interest we think was undoubtedly sufficient to enable her to sue or be sued with reference thereto. (See authorities above cited, and statutes of Kansas.) We also think that the acts and conduct of the defendant during the time while the plaintiff was paying for the land, so far bound her to alienate her interest in the land that a court of equity now has the power to and will enforce the completion of such alienation. (*Edwards v. Fry*, 9 Kas. 417, 426, 427.)

The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in favor of the plaintiff and against the defendant.

All the Justices concurring.