PHILEMON WOODRUFF et al., executors and trustees, &c.,

v.

DORA DE W. WHITE et al.

[Decided February 24th, 1911.]

1. The words in a will must be taken in their natural meaning.

2. The heirs are not to be disinherited by a will unless a clear intent appears by its language to that effect.

3. Testator gave his residuary estate to trustees to support a son at a cost of not exceeding $3,000 a year, and to pay a daughter for life $1,000 annually, and he directed that the income from the remainder should, during the life of a brother, be divided into four parts, one part of which should be paid to the brother for life and the other parts to enumerated beneficiaries, and that at the death of the brother the income given him should be paid to his eldest daughter until the death of the son and daughter of testator, and at the death of the survivor of them the executors should sell all the real estate then unsold and divide the proceeds equally into six parts, to be disposed of in a manner prescribed.—*Held*, that testator did not dispose of the remainder of his estate except the proceeds of real estate unsold at the time of the death of his brother and son and daughter, and the words "proceeds of real estate then unsold" cannot be construed to mean real estate sold by the executors before that time on the theory of equitable conversion, and hence there was a partial intestacy.

4. If possible, a will must be so construed as to dispose of all of testator's estate; but the court, to prevent intestacy, may not disregard unambiguous and clear language producing intestacy.

Heard on bill, answers, replications and proofs in open court.

The bill in this suit is filed by the executors and trustees of the will of Absalom B. Woodruff, deceased, and its purpose is to obtain from this court instructions and directions concerning their duties as trustees. The defendants are the various persons interested in the estate of the decedent.

The opinion only gives the reasons for so much of the decree as counsel inform the court is to be controverted, and consequently no reference is made to numerous other questions which were raised and disposed of and from which counsel do not intend to appeal.

*Mr. Wm. I. Lewis,* for the complainants.

*Messrs. Humphreys & Sumner,* for Ellen A. See and others.

*Mr. Gustav A. Hunziker,* for Old Ladies' Home at Totowa, Paterson, New Jersey.

*Mr. Jacob W. De Yoe,* for Byard S. Woodruff and others.

*Mr. John H. Reynolds,* for Harry O. Woodruff and others.

*Mr. Robert Williams,* for the Paterson Orphan Asylum.

*Mr. Francis Scott,* for St. Paul's Episcopal Church and Trinity Chapel at Totowa.

*Messrs. Vreeland, King, Wilson & Lindabury,* for Theodora de W. White.

GARRISON, V. C.

To dispose of the issues raised in this suit it is necessary to construe the will of Absalom B. Woodruff, deceased. After providing for some specific bequests the will gave all the rest of the real and personal estate to the executors and trustees upon the following trusts:

"*First.*—To pay the necessary expenses of the maintenance and sup-port of my son Howard de Wolf Woodruff, during his lifetime, or, until he has entirely recovered his mental health, in the best manner to accomplish his recovery, according to their judgment, to the extent of not exceeding three thousand dollars a year.

"*Second.*—To pay to my daughter, Mrs. Thomas W. White, one thousand dollars a year during her lifetime, payable quarterly.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"*Fourth.*—All of the income from the remainder of my estate during the lifetime of my brother Henry, I direct shall be divided into four parts, and the one-fourth part thereof to be paid quarterly to my brother, Henry, during his lifetime. one-fourth part thereof to be paid quarterly to Saint Paul's Episcopal Church, Paterson, New Jersey, one-fourth part thereof to be paid quarterly to Trinity Chapel, at Totowa, Paterson, New Jersey, and the other one-fourth part thereof to be equally divided between the Paterson Orphan Asylum in Market street, and the Old Ladies' Home, at Totowa, Paterson, New Jersey.

"*Fifth.*—At the death of my brother Henry Woodruff, it is my will that the income hereinbefore bequeathed to him (that is said one-fourth part), shall be paid to his eldest daughter until the death of my son Howard and my daughter Mrs. Thomas W. White, and at the death of the survivor of them (my son Howard and my daughter Mrs. Thomas W. White) I direct my executors to sell all my real estate *then unsold*, and divide *the proceeds* equally into six parts, and I give, devise and bequeath the one of said sixth parts to be divided equally between the children then living of my daughter, Mrs. Thomas W. White; the one-sixth part to the Paterson Orphan Asylum, the one-sixth part to the Old Ladies' Home, at Totowa; the one-sixth part to Henry Woodruff, my brother, if he be then living, and, if he then be dead, to his children then living, in equal parts; one-sixth part to the children then living of my brother William P. Woodruff, and one-sixth part to the children then living of my brother Hezekiah S. Woodruff, deceased, that is to say, the one-sixth part to each of the six parties named as above."

At the date of the testator's death, his son Howard and his daughter, Mrs. Thomas W. White, were each living, as was also his brother Henry. At the time of the filing of the bill herein all of these persons were dead, Mrs. White and the brother Henry having left children.

The questions now to be disposed of arise out of the language above quoted, and are to be settled in accordance with what the court shall find that such language means.

The principles of law which apply are, I take it, entirely settled, and do not require the citation of authority to bring them to mind or illustrate them. The words used in a will, as I understand it, must be taken in their natural meaning; the

court is called upon to construe what the testator has said and not to supply language, and thereby make him say that which he did not say; and the heirs of a decedent are not to be disinherited unless a clear intention appears by the language of the will to that effect.

Applying these principles to the language of the testator, as above cited, I reach the conclusion that the testator by this will meant as follows: All of his estate, after the specific bequests, went to his executors, and they were required from the income, if it reached so far—and, if not, then from the principal—to pay to his son Howard during his lifetime, or until he recovered his reason, an amount not exceeding $3,000 a year; and to pay to the daughter from the same source $1,000 a year. If there was any income left after paying the two above charges, such income, during the lifetime of the testator's brother Henry was to be divided into four parts, and one-fourth was to be paid to Henry during his lifetime, and after his death to his eldest daughter; one-fourth to Saint Paul's Episcopal Church at Paterson; one-fourth to the Trinity Chapel, Totowa, Paterson, and one-fourth to be divided equally between the Paterson Orphan Asylum and the Old Ladies' Home at Totowa, Paterson.

At the death of his brother Henry, the income which had been going to him (assuming, of course, that there had been any such) was to be paid to his eldest daughter until the time of the death of the testator's son Howard and of his daughter, Mrs. White. After the death of Henry and of the son Howard and the daughter, Mrs. White, the executors were to sell all the real estate then unsold (provision having been made for the sale by them of certain real estate in their discretion) and divide the proceeds equally into six parts, one of which was to be divided equally between the living children of Mrs. White, one of which was to go to the Paterson Orphan Asylum, one to the Old Ladies' Home at Totowa, one to Henry Woodruff the brother, if living (curiously enough the testator overlooked the fact that the division was not to take place until after Henry's death), and if Henry was dead, then to his living children in equal parts, one to the children then living of the testator's brother William, and one to the children then living of the testator's brother Hezekiah.

It will be observed that the testator fails to make final disposition of any part of the *corpus* of his estate excepting the proceeds of such real estate as shall have been unsold at the time of the death of his brother Henry and his son and daughter; it therefore follows that he died intestate as to the *corpus* of his estate, excepting the proceeds of the sale of such real estate as remained unsold at the time just mentioned, and included in the *corpus* of which he died intestate is all accumulated income out of that income which was divided into four parts as above set forth, and which as to three parts was only to be paid out during the lifetime of Henry; and the other one-fourth, it will be seen, continued to be paid out after the death of Henry and up until the deaths of the son Howard and the daughter, Mrs. White.

The result is, that, excepting the proceeds of the sale of such real estate as remained unsold at the time aforesaid, the heirs take the same, and the trustees are so instructed.

It is argued, on behalf of the others, that the fifth clause above quoted should be so construed as to dispose of all of the estate, and those cases are cited which maintain the unquestioned principle that, if possible, a will shall be so construed as to dispose of all of the estate. The difficulty is that to make the language in question dispose of all of the estate would not be construction but creation—in other words, it would be to make a will and not to construe the one which the testator made.

The language of the clause in question is perfectly clear. After fixing the time, he says, "I direct my executors to sell all of my real estate then unsold and divide the proceeds equally into six parts," and then dispose of the six parts.

I cannot see how it is possible to make this language apply to anything except that which it plainly describes, *i. e., the proceeds of real estate then unsold.* It is suggested that it should be made to apply to the proceeds of real estate sold by the executors before that time, and the doctrine of equitable conversion is invoked; but I have been unable to see the application of this argument to the language and facts in hand. Assuming that the doctrine of equitable conversion applies, and that the proceeds of the real estate sold during the life of the trust and before this

division was to be made is to be treated as real estate, it surely is not "real estate then unsold," and it is, therefore, a palpable absurdity, to my mind, to say that under the words "proceeds of real estate then unsold" are included the proceeds of real estate already sold.

No useful purpose will be served by further dwelling upon the point in question. The sole matter for consideration is what does certain language mean? To my mind, the meaning is perfectly clear, and that is all with which the court is concerned. While it is true that the court will endeavor to so construe a will as to prevent intestacy, it is equally true that the intention to disinherit an heir must clearly appear before that result will be effectuated, and that even the desire of the court to prevent intestacy does not permit it to disregard unambiguous and clear language which produces intestacy, or to substitute or supply language to prevent it.

The instructions to the executors and trustees will therefore be in accordance with the views herein expressed.