CAMDEN COUNTY ORPHANS COURT.

IN THE MATTER OF THE ESTATE OF CHARLES E. DERBY, DECEASED.

Decided July 13, 1935.

For the substituted trustee, Camden Safe Deposit and Trust Company, *George Reynolds*.

For Elden H. Jennison, *Boyle & Archer*.

For Alice Pratt and Josephine Ward, *Grover C. Richman*.

NEUTZE, C. P. J. The Camden Safe Deposit and Trust Company, substituted trustee under the will of the testator, Charles E. Derby, has filed its final account, which was duly allowed by this court, and now petitions for a decree of distribution under the terms of the will.

The testator, Charles E. Derby, died testate in 1901 with *inter alia,* the following provision in his will:

"I give and devise unto my grandson Charles Derby Milton during his natural life, the income from twenty-five thousand dollars, the said sum to be invested by my executor and trus-

tee, or the survivor of him, and the income thereof, to be paid by him, at such times as he may think proper; and after the death of the said Charles Derby Milton, I give, devise and bequeath the said sum of twenty-five thousand dollars, to his child or children, share and share alike, and should the said Charles Derby Milton die without leaving issue surviving him, then and in such case I direct my executor and trustee, or the survivor of him, to divide the said sum of twenty-five thousand dollars, among the heirs of my brother John L. Derby and the heirs of my two sisters, Caroline M. Clark and Ann Mary Jennison, respectively."

The facts that exist to-day give rise to a dispute as to the intention of the testator in respect to this clause.

The life tenant, Charles Derby Milton, died in August, 1934, without leaving issue. Therefore the latter portion of this bequest becomes operative in favor of the substitutionary legatees. Such legatees are the heirs of the testator's brother and two sisters. Briefly reiterating such bequest *verbatim* from the will, it reads, "to divide the said sum of twenty-five thousand dollars, among the heirs of my brother John L. Derby, and the heirs of my two sisters Caroline M. Clark and Ann Mary Jennison respectively."

At the time of the death of the life tenant, the testator's brother and sisters were all deceased. The brother, John L. Derby, predeceased the testator leaving no issue but only the two children and one grandchild of his two sisters are his heirs. The testator's sister, Caroline Clark, died in 1915, survived by her daughter, Alice Pratt, and a granddaughter, Josephine Ward, who is a daughter of a deceased son, Charles Clark, by name. The testator's sister, Ann Mary Jennison, died in 1916, survived by a sole son, Elden Jennison.

The heirs of testator's sister, Caroline Clark, contend that this substitutionary bequest should be divided *per capita* among all the heirs of the brother and sisters. This would provide for a one-third distribution to the three parties concerned.

The heir of testator's sister, Ann Mary Jennison, contends on the other hand, that a *per stirpes* division is what the

testator intended and the heirs take under the measurement of representation. This construction would inure to the benefit of this particular legatee by ultimately giving him one-half of the fund.

The "heirs" of a person are never capable of being determined until that person dies. In this case, the brother and sisters are all deceased at the time of the death of the life tenant, who died without leaving issue. Therefore the estate may at this time be distributed among the "heirs" of the brother and the heirs of the two sisters respectively. The question is—did the testator intend to divide his estate *"per stirpes"* or *"per capita"* among the various heirs.

In determining the intention of the testator in each particular will, the court looks at the provisions of the will as a whole and attaches a natural meaning to the words used (*Holcomb* v. *Lake,* 24 *N. J. L.* 686; *Stout* v. *Cook,* 77 *N. J. Eq.* 153; 75 *Atl. Rep.* 583; *Woodruff* v. *White,* 79 *N. J. Eq.* 225; 81 *Atl. Rep.* 1134; affirming 78 *N. J. Eq.* 410; 79 *Atl. Rep.* 304), unless, of course, the words used have a legal connotation in which case the testator is presumed to know that that meaning will be attached to his words if nothing further is said in the will to show a contrary intention. *Supp* v. *Second National Bank and Trust Co.,* 98 *N. J. Eq.* 242; 130 *Atl. Rep.* 549; *Bonnell's Ex'rs* v. *Bonnell,* 47 *N. J. Eq.* 540; 20 *Atl. Rep.* 895.

The testator, Charles E. Derby, intended that the heirs of his brother and two sisters were to take *"per stirpes"* and not *"per capita."* Aside from the fact that whenever the question has arisen as to whether the testator intended a *"per stirpes"* or *"per capita"* distribution, the courts have adopted the former construction if the testator has not clearly shown his intention. In this case the testator has actually manifested an intention to have the bequest distributed *"per stirpes."*

Negativing the possibility that the testator intended to create as one class of legatees, the heirs of the testator's brother and as the second class the heirs of the two sisters, the most reasonable construction of the words actually used

by the testator is that the testator intended to constitute the heirs of his brother, John L. Derby, as one class, the heirs of his sister Caroline M. Clark as a second class and the heirs of his sister Ann Mary Jennison as a third class.

This intention is manifested by the creation of a skeleton of the phrase actually used by the testator as follows: "among the heirs of my brother  *  *  *  and the heirs of my two sisters  *  *  *  respectively." Particular notice attaches to the words "heirs," "two" and "respectively."

The word "heirs" has been denoted as meaning "representation" if all the legatees are not in equal relationship unless the testator has evidenced a contrary intention in his will. In New Jersey, this rule applies equally in cases where the heirs take an original bequest as when they take as substituted beneficiaries. *Leavitt et al.* v. *Dunn,* 56 *N. J. L.* 309; 28 *Atl. Rep.* 590.

If the testator had seen fit to put a different construction upon the word "heirs" he could have said "to be divided among the heirs equally," or of like import. In such cases, the testator manifests an intention that a *"per capita"* distribution is intended even though the heirs are of unequal degree. But lacking such manifest intention, where a testator makes a bequest to heirs and they are not in equal degree, those who take, take by representation or *per stirpes.* *Scudder* v. *Van Arsdale,* 13 *N. J. Eq.* 109; *Smith* v. *Palmer,* 7 *Hare* 225; *Welsh* v. *Crater,* 32 *N. J. Eq.* 177. The testator could have manifested a division of his estate *"per capita"* by using the word "children." This he did not do and the court is bound by the terms he has actually used. In the case of *Roome* v. *Counter,* 6 *N. J. L.* 111 (at *p.* 114), Chief Justice Kirkpatrick said, "*  *  *  and besides the bequest is not to the children of Peter but to his heirs, a term which always carries with it the idea of representation, which the term children does not."

In the bequest now under construction it was only to heirs of unequal degree with no further directions. It clearly comes within the cases adopting the construction of such terms to be a *"per stirpes"* and not a *"per capita"* bequest.

As further evidence of the testator's intention to create a *per stirpes* division, the will provides for the heirs of his brother and two sisters respectively. His use of the word "two" coupled with the word "respectively" sets off the heirs of each sister in a separate class, and with the heirs of the brother makes three separate classes of beneficiaries. If only one class of beneficiaries had been intended, the testator would not have gone to the trouble of enumerating his sisters and then tagging their heirs with the appendage "respectively."

In leaving this phase of the case before the court, it is well to remember the rule of construction set forth in Chancellor Runyon's opinion in the case of *Stoutenburgh* v. *Moore*, 37 *N. J. Eq.* 63 (at *p.* 71). It is as follows: "If it is doubtful whether he intended the distribution among his grandchildren to be *per stirpes* or *per capita,* the court should adopt a construction in favor of the former method, not only as being most probably in accordance with his intention but also as being in accordance with the policy of the law."

The bequest in this case was $25,000 in personalty. The question is who are the persons meant by the testator when he used the words "heirs." One sister had one child, the other sister had one child and one grandchild and the brother has as his heirs all three foregoing persons, children and grandchild of his sisters.

Citing from Chancellor McGill in *Reen* v. *Wagner,* 51 *N. J. Eq.* 1; 26 *Atl. Rep.* 467, he said: "It is a cardinal rule in the interpretation of wills that the testator's intention as it is manifested by his will shall control. In seeking that intention, courts by a long line of adjudications have given a fixed meaning to certain phrases, words and methods of disposition, which govern where there is nothing in the will to indicate that a different meaning was contemplated by the testator; and from such adjudications spring a large number of subsidiary rules for the interpretation of wills, which are from time to time invoked to solve perplexing questions of construction where it is doubtful what the intention was. Such rules are of the utmost importance in the interest of

certainty in will making, putting it within the power of the intelligent scrivener to safely and accurately express that which the testator wishes; and for this reason those rules should not be departed from unless it clearly appears that the testator intended another meaning than that which they declare. It is one of those subsidiary rules that, where personal property is bequeathed to the heirs of A or the heirs of the testator, the next of kin are entitled to claim under such description as the persons appointed by law to succeed to the personal property."

It is well established that the word "heir" when used in reference to the disposition of personal property, without any express contrary definition by the testator, has come to mean the next of kin of the testator or named person. Not the next of kin in its literal meaning of nearest blood relations but rather within the meaning of the statute of distribution. *Scudder* v. *Van Arsdale, supra; Welsh* v. *Crater,* 32 *N. J. Eq.* 177; *Ward* v. *Dodd,* 41 *Id.* 414; 5 *Atl. Rep.* 650; *Leavitt* v. *Dunn,* 56 *N. J. L.* 309; 28 *Atl. Rep.* 590; *Meeker* v. *Forbes,* 84 *N. J. Eq.* 271; 93 *Atl. Rep.* 887; *In re Young's Estate,* 163 *Atl. Rep.* 433.

The substitutionary bequest in the testator's will is to the heirs of the brother and the two sisters. A person has no heirs until his or her decease. In this case, the testator gave the heirs of the brother and sisters a vested interest subject to being divested by the death of the life tenant leaving issue. The testator's brother, John L. Derby, died in 1899, while the testator died in 1901. At the death of the testator, the heirs of the testator's brother then secured their vested interest subject to being divested as aforesaid. At that time the heirs of the testator's brother were his two sisters, Caroline Clark and Ann Mary Jennison, he not having any children or descendants of children. The statute of distribution (*Pamph. L.* 1899, *ch.* 83, *p.* 204, amending the act of 1898), at that time provided as follows in such cases (3 *Comp. Stat., p.* 3875, § 169 III) : "And in case there be no widow, then all the said estate to be distributed equally to and among the children; and in case there be no child, then to the next of

kindred, in equal degree, of or unto the intestate and their legal representatives as aforesaid." This amendment to the statute of distribution in effect at the time of the death of the testator allowed representation after children of brothers and sisters. See *Fisk* v. *Fisk,* 60 *N. J. Eq.* 195; 46 *Atl. Rep.* 538. There was no limitation among collaterals after deceased brothers' and sisters' children as there was prior to and subsequent to this particular statutory amendment. (See for present act *Pamph. L.* 1930, *ch.* 130, *p.* 395, § 169b; *Cum. Supp. Comp. Stat.* 1925-1930, *p.* 1339, § 146-169b.)

The heirs of the brother being of unequal degree, namely, a nephew of one sister and a niece and grandniece of the other sister, they take *per stirpes* or by representation of their respective parent. The sole child, Elden Jennison, of Ann Mary Jennison, takes a one-half of the one-third interest allotted to the heirs of John L. Derby and Alice Pratt takes a one-half of one-half of this same one-third while Josephine Ward takes the other one-half of one-half of the one-third as heirs of John L. Derby, both taking by representation of the sister Caroline Clark. Briefly, by virtue of being heirs of John L. Derby, his nephew Elden Jennison, son of Ann Mary Jennison, secures one-sixth and his niece, Alice Pratt, daughter of Caroline Clark, and Josephine Ward, daughter of his deceased nephew Charles Clark, who in turn was a son of Caroline Clark, are both entitled to a one-twelfth share of the entire bequest.

The respective heirs of the two sisters of the testator take in accordance with the provisions of the act of 1914, chapter 47, page 71, section III (*Cum. Supp. Comp. Stat., p.* 2629, § 146-169 III), which is, in effect, similar to the provisions of the statute in force at this time. It is as follows: "If there be no husband or widow as the case may be, then all of the said estate to be distributed equally to and among the children; and in case there be no child, nor any legal representative of any child * * *."

Elden Jennison, only child of Ann Mary Jennison, takes one-third of the entire bequest by virtue of being her heir.

Alice Pratt, daughter of Caroline Clark, takes one-half of

one-third of one-third of the entire estate by virtue of being one of the heirs of Caroline Clark. Josephine Ward as the sole child of a deceased son of Caroline Clark is entitled to the remaining one-half of the one-third of one-third which goes to the heirs of Caroline Clark.

Reducing all the various rights of the heirs of testator's brother and two sisters to this bequest to a common denominator, Elden Jennison is entitled to one-half of the entire bequest. Alice Pratt is entitled to one-fourth of the entire bequest and Josephine Ward is entitled to one-fourth of the entire bequest.