No. 43,602

MILDRED JACKSON, *Appellee*, v. JOSEPHINE JACKSON LEE, CHARLES L. JACKSON, FRED E. JACKSON, ROBERT E. JACKSON, ROBERTA MAE POWERS, nee JACKSON, and HOBART McMILLEN, *Appellants*.

(392 P. 2d 92)

Opinion filed May 9, 1964.

*Richard D. Rogers*, of Manhattan, argued the cause, and *John F. Stites*, of Manhattan, was with him on the briefs for the appellants.

*Clarence R. Sowers*, of Wichita, argued the cause, and *John W. Sowers*, of Wichita, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from a judgment determining title to real estate in an action for partition.

The basic facts which are not in dispute will be stated as briefly as the state of the record permits.

Charles H. Jackson owned 1900 acres of land in Comanche County, Kansas. On January 3, 1939, he made a will in which he devised a life estate in the land to his wife, Josephine Jackson. Upon the death of Josephine 800 acres of land was to go to his daughter, Beatrice Zimmerman, in fee simple. The remainder of the 1900 acres was to go to a son, Robert S. Jackson, for life with the remainder to the son's heirs in fee simple. The construction of this specific provision in the will presents the controversy before us. It reads:

". . . All the rest of said 1900 acres above described, at the termination of the life estate of my wife, I give, devise and bequeath to my son, ROBERT S. JACKSON, for his life, and upon his death, then I give, devise and bequeath said 1100 acres to his heirs in fee simple."

At the time of the execution of the will of Charles H. Jackson, the

son, Robert, was a widower with five children. Robert married the plaintiff, Mildred Jackson, on July 3, 1939.

Charles H. Jackson died on July 13, 1941. Subsequently his will was admitted to probate in Comanche County. On July 18, 1942, the probate court of that county entered a decree of final settlement. The decree, so far as here pertinent, provided:

"That it is determined by the Court that Robert S. Jackson is entitled to and there should be assigned to him a life estate after the termination of the life estate of his mother, Josephine Jackson, in the following described land in Comanche County, Kansas, to-wit:

(Here follows description of land involved.) and that upon the death of Robert S. Jackson, then the remainder in fee should be and is hereby assigned to his heirs in fee, all as directed by the Will of the said deceased."

Josephine Jackson died some three or four years after her husband, Charles. Robert S. Jackson, the son, died June 19, 1961, leaving as his sole and only heirs-at-law his second wife Mildred and the five children of his first wife.

Previous to the death of Robert, and on January 22, 1951, Mildred conveyed part of her contingent interest in the land, or all of her interest subject to contingent payments, to Hobart McMillen. The nature of this particular conveyance is not material to this controversy.

On July 7, 1961, Mildred brought an action for partition of the land in question. In her petition she alleged that under the will of Charles H. Jackson she owned a one-half interest therein and the five children of Robert owned an undivided interest in the remaining one-half thereof, all of which was held as tenants in common.

On November 3, 1961, the trial court permitted Hobart McMillen to be made a party defendant in the action.

Thereafter, and on November 25, 1961, Mildred transferred all of her interest in the land to McMillen by a quitclaim deed. McMillen then filed a cross-petition setting up his claim to the interest of Mildred. The five children, defendants below and appellants here, filed joint answers to the petition and the cross-petition.

The gist of the answer to the petition may be found in the following allegation:

"The defendants further answer that they alone own the above described real estate as tenants in common and that the plaintiff has no interest therein.

"For further answer to the plaintiff's Petition the defendants allege that if the plaintiff become the owner of any interest in the above described real estate under and by virtue of the Will of Charles H. Jackson; which the de-

fendants specifically deny, then that under the terms of said Will the plaintiff, Mildred Jackson, took as a member of a class and on a per capita basis with each of the defendants herein, and therefore the plaintiff's interest in said real estate is only a 1/6th interest."

In part the answer to the cross-petition alleged:

"The defendants further Answer that the only interest the intervenor, Hobart McMillen could have in the real estate described as follows, to-wit:

(Here follows description of land involved.) would be the interest, if any, that the plaintiff, Mildred Jackson, had in said real estate and that therefore the defendants specifically deny that Hobart McMillen is the owner of any interest in the said real estate."

The answer to the cross-petition, by reference, made the answer to the petition a part thereof.

When the case came on for trial the parties introduced evidence purporting to show the intention of the testator, Charles H. Jackson. At the close of the trial the lower court concluded in part:

"The Court finds that this case rests on the construction, as a matter of law, of the portion of the Will of Charles H. Jackson, deceased, which reads as follows:

" '. . . I give, devise and bequeath to my son, Robert S. Jackson, for life, and upon his death, then I give, devise and bequeath said 1,100 acres of land *to his heirs in fee simple.'*

"(a) and on this point the conclusion of the Court, as a matter of law, is that the above described real estate was devised and bequeathed to Robert S. Jackson for his life and upon the death of Robert S. Jackson said real estate became vested in fee simple in the heirs-at-law of Robert S. Jackson, deceased, and that said title vested in the named heirs-at-law of Robert S. Jackson, deceased, as follows:

"(Mildred Jackson, one-half, the five children of Robert S. Jackson each one-tenth.)

"Although the Court does not rest his opinion on the testimony offered as to the intention of the original testator, the court is moved to comment that defendant, having offered testimony of intention, opened the door to the testimony of Jay T. Botts, who drew the will, and the testimony of said Jay T. Botts establishes the intention of the testator to be in accordance with the conclusion stated above."

and rendered judgment accordingly. Thereafter, having filed a motion for a new trial which was overruled, defendants perfected the instant appeal.

The salient question for determination is the interpretation to be placed on the clause in the will of Charles H. Jackson which reads:

". . . I give, devise and bequeath to my son, ROBERT S. JACKSON, for his life, and upon his death, then I give, devise and bequeath said 1100 acres *to his heirs in fee simple.*" (Emphasis supplied.)

The appellants first contend that Mildred Jackson is not an heir of her husband under the statutes of intestate succession. They state:

"We must remember that the right of a widow in Kansas to inherit from her husband arises by reason of G. S. of Kansas, 1949, Section 59-505, and the statutory interest does not come to the spouse by inheritance. . . ."

We cannot agree with all of appellants' contention. However, we can agree that G. S. 1949, 59-505, which gives one-half of the realty of which one spouse is seized or possessed during the marriage to the other spouse, is not a statute of inheritance. The interest which the statute gives one spouse in the real estate of the other comes into existence by operation of law upon the concurrence of seizin and the marriage relation. The widow takes not as an heir of her husband under this statute but as her separate and absolute property in fee simple. The interest is one that a wife may protect during her husband's lifetime. See, e. g., *Overman v. Hathaway,* 29 Kan. 434; *Busenbark v. Busenbark,* 33 Kan. 572, 7 Pac. 245; *McKelvey v. McKelvey,* 75 Kan. 325, 89 Pac. 663; *Putnam v. Putnam,* 104 Kan. 47, 52, 177 Pac. 838; *In re Estate of Williams,* 158 Kan. 734, 737, 150 P. 2d 336. It may be said that 59-505, *supra,* protects the interest in the real property during the marital relation which a spouse has the right to inherit under the provisions of G. S. 1949, 59-504.

Heirship and the right of inheritance, including the right of a spouse, are governed by other provisions of the statute. The right of heirship is determined by the laws of intestate succession. G. S. 1949, 59-502 provides in part:

". . . the property of a resident decedent, who dies intestate, shall at the time of his death pass by intestate succession as provided in this article."

The right of a surviving spouse to inherit is governed by G. S. 1949, 59-504, which reads:

"If the decedent leaves a spouse and no children nor issue of a previously deceased child, all his property shall pass to the surviving spouse. If the decedent leaves a spouse and a child, or children, or issue of a previously deceased child or children, one-half of such property shall pass to the surviving spouse."

Other provisions of the statute (G. S. 1949, 59-506 to 59-509, incl.) provide for a complete line of intestate succession. If there are no heirs such as are mentioned in the statute the property

escheats to the state (G. S. 1949, 59-514). Contrary to a suggestion by appellants, the common law as to heirs and intestate succession has no application in this state, it has been superseded by our statutory laws of intestate succession.

Heirship is a legal right regulated by law. It is not a mere privilege. It is to be enjoyed subject to the conditions prescribed by statute. An "heir," as the word is commonly understood in this state, is one who takes by intestate succession under the Kansas statutes. This appears to be the rule elsewhere.

See 26A C. J. S., Descent & Distribution, § 19, pp. 558, 559, where the meaning of the word heirs is discussed:

"The heirs of a person are those whom the law appoints to succeed to his property or estate on his death intestate. The word involves the idea of descent or inheritance by operation of law, as distinguished from a transfer by will; it refers to a class of persons who take by succession; it means all those who are legally entitled to partake of the inheritance; and it may imply representation, at least in the sense that an heir of the real property of decedent is a real representative. So, also, an heir at law is the one on whom the law casts inheritance; legal heirs are the persons to whom the law gives the property of an intestate decedent; . . ."

See, also, 95 C. J. S., Wills, § 673, pp. 994, 995, which reads:

". . . The word 'heirs,' in its popular or ordinary sense, is used to designate the persons who are entitled to take under the statutes of descent and distribution, and the proportions which they are to take, particularly where the will refers to such statutes in connection with the word 'heirs.' Unless it is clearly shown by legitimate evidence that the testator used the word 'heirs' in a different sense, when it is used in a will to point out the devisees or legatees, it should ordinarily be construed to mean those persons on whom the law casts the inheritance, and it has been held that there is a presumption that the word 'heirs' in a will is used in this sense."

This court has defined "heirs in fee simple" and has held that under the statutes of descent and distribution one spouse is the heir of the other.

In *Newby v. Anderson*, 106 Kan. 477, 188 Pac. 438, we held:

" 'The statute may make any person an heir. An heir in law is simply one who succeeds to the estate of a deceased person.' (*McKinney v. Stewart*, 5 Kan. 384.) The statute of descents and distributions treats the husband as the heir of the wife; the wife as the heir of the husband. (Gen. Stat. 1915, §§ 3831, 3850.)" (Syl. ¶ 2.)

In *Grossenbacher v. Spring*, 108 Kan. 397, 195 Pac. 884, we said:

". . . but when lands are devised by will to any person for his life,

and after his death to his heirs in fee (not restricted to heirs of his body), such devise vests a life estate in the person so named and a remainder in fee simple in his statutory heirs. (Gen. Stat. 1915, § 11808.) . . ." (pp. 401, 402.)

We cannot agree with appellants' contention that the phrase "heirs in fee simple" should be construed to mean "children" or "issue." We disposed of that contention in *Gardner v. Anderson, Trustee,* 116 Kan. 431, 227 Pac. 743, where it is stated:

"*There is a very potent reason why the court can give no countenance to a loose interpretation of the words 'heirs in fee' as meaning 'issue,'* or suffer them to be used synonymously and interchangeably. Our rules of statutory construction provide:

"'*Second.* Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law shall be construed according to such peculiar and appropriate meaning.' (R. S. 77-201.)

"It cannot be denied that the words 'heirs in fee' and 'issue' have long possessed a peculiar and appropriate meaning in law, and their respective meaning and the clear distinction between them must neither be slighted nor confused. Moreover, the statute itself defines the word 'issue.'

"'*Seventh.* The word "issue," as applied to the descent of estates, includes all the lawful lineal descendants of the ancestor.' (R. S. 77-201.)

"On the other hand, an 'heir' or 'heir at law' is simply the person designated by the statute who succeeds to the estate of a deceased person, and the statute may make anybody an heir. An 'heir in fee' is merely the person on whom the fee title devolves by the statutory rule of inheritable succession.

"Blackstone says:

"'We are to reflect, in the first place, that all rules of succession to estates are creatures of the civil polity, and *juris positivi* merely . . . There is certainly, therefore, no injustice done to individuals, whatever be the path of descent marked out by the municipal law.' (1 Cooley's Blackstone, 3d ed., Book II, pp. 451, 452.)" (p. 435.) (Emphasis supplied.)

Appellants cite numerous cases in support of their position. The cases deal with the right of a spouse under the provisions of 59-505, *supra,* and are not applicable here. In the case at bar we are not dealing with the right of one spouse to an interest in the real estate of the other. We are considering whether the wife is the heir of the husband where a third party devises real property to the husband's heirs in fee.

In view of what has been heretofore stated and held we are forced to conclude that the appellee, Mildred Jackson, was an heir of her husband, Robert S. Jackson, as that term was used in Charles H. Jackson's will.

In passing it should be pointed out that, like the trial court, we base the foregoing conclusion upon the language of the will itself without resort to oral testimony of record regarding the intent of the testator. Where a testator uses familiar words, having a peculiar and appropriate meaning in law, it must be presumed, in the absence of a clearly indicated contrary intent in the will, that he used them in their ordinary legal sense. Nevertheless, having examined the record, we are constrained to state that we agree with the trial court's heretofore quoted comment that the testimony introduced did establish the intent of the testator to be in accordance with our conclusion.

Appellants next contend that if the appellee, Mildred Jackson, is entitled to take anything under the will of Charles H. Jackson, she is entitled only to a *per capita* share, or an undivided one-sixth interest. In support of their contention they make the following statement:

"The fact that the testator failed to prescribe the amounts the heirs should receive or to provide for a *per stirpes* distribution, or to provide that such distribution should be made in accordance with the law of descent and distribution, indicates his clear intention that the heirs as a class should take in equal shares."

For reasons to be presently stated we cannot agree with appellants' contention on this point. Although this court has not passed specifically on the particular question, the general rule appears to be that a devise or bequest to "heirs," whether it be the testator's heirs or the heirs of a third person, designates not only who are to take, but also the portions in which they are to take. The law will presume an intention that the heirs take according to the law of descent and distribution unless there is language in the will indicating a contrary intention.

In 96 C. J. S., Wills, § 711, pp. 85, 86, the rule of construction is stated thus:

"As a general rule, the law presumes the intention of the testator to be that the beneficiaries shall take per stirpes and not per capita where a devise or bequest is made to 'heirs,' 'heirs at law,' or 'legal heirs,' or in cases where such devise or bequest is made to 'heirs and assigns,' and this rule has been applied where the heirs are not in equal degree, and also where the heirs take an original bequest as when they take as substituted beneficiaries. Under a testamentary gift to heirs, nephews and nieces have been held to take per capita and the descendents of deceased nephews and nieces to take per stirpes, where there were no other heirs. The presumption that

heirs are to take per stirpes, however, is easily controlled by words indicating that they should take per capita and not per stirpes, as where all of the heirs are of an equal degree of relationship, where the word 'heirs' as used in the will is equivalent to 'children,' or where the devise or bequest is expressed in words indicating an equal division among all the heirs."

57 Am. Jur., Wills, § 1303, p. 862, deals with the same subject. It states:

"A rule of construction which is very generally, although not universally, recognized, is that a devise or bequest to 'heirs,' whether it be to the testator's heirs or the heirs of a third person, designates not only the persons who are to take, but also the manner and proportions in which they are to take; and where there are no words to control the presumption of the testator's intention, the law will presume it to have been that the beneficiaries should take as heirs would take by the law of intestate succession. . . ."

The foregoing rule of construction appears to be supported by ample authority.

See *Kramer v. Larson,* 158 Neb. 404, 63 N. W. 2d 349, which reads:

"The more acceptable and better reasoned view is that if property is given or devised to heirs of the testator without naming them, that this requires a reference to the statutes of descent and distribution to determine who will take by virtue of the provisions of the will; that the beneficiaries take in the proportion prescribed by the statute; and that if the beneficiaries are not of equal degree they will take per stirpes in the absence of a declaration in the will to the contrary. The basis of this is that the testator having made a resort to the statutes necessary to ascertain who are his beneficiaries intended that it should also govern the proportion which they should take unless he expressed in the will a different intention. . . ." (pp. 409, 410.)

See, also, *Runyan v. Rivera,* 99 Ind. App. 680, 192 N. E. 327, where it is said:

"A devise to the "heir" of a named person, whether the testator or another, is ordinarily, in the absence of any expression showing a contrary intention, taken as a direction for distribution *per stirpes.* A gift of personal property to "heirs" is, in effect to those who would take under the statute of descent and distribution; and in the same proportions as they would take under such statute.' 2 Page, on Wills (2nd Ed.) Sec. 946, p. 1587." (pp. 683, 684.)

And see *In re Derby,* 13 N. J. Misc. 562, 180 Atl. 216, which reads:

"The word 'heirs' has been denoted as meaning 'representation' if all the legatees are not in equal relationship unless the testator has evidenced a contrary intention in his will. In New Jersey, this rule applies equally in cases

where the heirs take an original bequest as when they take as substituted beneficiaries. *Leavitt et al. v. Dunn,* 56 N. J. L. 309; 28 Atl. Rep. 590.

"If the testator had seen fit to put a different construction upon the word 'heirs' he could have said 'to be divided among the heirs equally,' or of like import. In such cases, the testator manifests an intention that a *'per capita' distribution* is intended even though the heirs are of unequal degree. But lacking such manifest intention, where a testator makes a bequest to heirs and they are not in equal degree, those who take, take by representation or *per stirpes. Scudder v. Van Arsdale,* 13 N. J. Eq. 109; *Smith v. Palmer,* 7 Hare 225; *Welsh v. Crater,* 32 N. J. Eq. 177. . . ." (p. 565.)

Other cases discussing the same question may be found in *Katz Investment Co. v. Lynch,* 242 Iowa, 640, 47 N. W. 2d 800; *Hafner's Ex'r v. Hafner,* 306 Ky. 93, 206 S. W. 2d 196; *Duty v. Van Meter's Adm'rs,* 303 Ky. 440, 197 S. W. 2d 916; *Cross et al v. O'Cavanagh et al.* 198 Miss. 137, 21 So. 2d 473; *Powers v. Dossett,* 78 R. I. 235, 81 A. 2d 275; *Felts et al. v. Felts et al.,* 188 Tenn. 404, 219 S. W. 2d 903.

Although considering a case in which the facts and issues were somewhat different than those in the case at bar this court has held that a devise to "my then surviving heirs' after the death of a life tenant forms the basis for *per stirpes* distribution. In *Solomon v. Morse,* 188 Kan. 156, 360 P. 2d 1049, this court, in considering the summarized provisions of a will, stated:

"In the second paragraph of her will the testatrix gave her daughter Minnie a life estate in the real estate and provided she was not to sell, mortgage or in any way dispose of it during her lifetime. She then provided that at Minnie's death, the 'property be sold and divided *equally share and share alike between my then surviving heirs, all of whom are hereinafter named.* . . ." The third paragraph provided: 'I give devise and bequeath to my beloved children (naming them, except Minnie), all the residue of my property both real and personal of which I may die possessed, share and share alike.'

"At the time this case was decided, the learned judge of the district court filed a memorandum decision, and as it clearly sets forth the issues and the reasons for the decision, it is quoted in full:

(First paragraph of judge's memorandum decision is omitted as not material to the present issue.)

" 'The second question is: What did the testatrix intend when she directed that the property be sold and the proceeds divided between her then surviving heirs "equally and share and share alike?" The most reasonable construction to give the will, and the one which probably reflects the true intent of the testatrix is that she was describing her children as the branches from the common stem as the basis for a *per stirpes* distribution after the death of the life tenant. That is the construction which will be adopted by the Court.'

"In harmony with the court's memorandum decision judgment was entered

that the real estate was owned in fee simple as tenants in common and in the fractional interests by the parties as set forth in the pleadings, and partition was ordered.

"We think the district court correctly interpreted and construed the decedent's will . . ." (pp. 157, 158.) (Emphasis supplied.)

We have carefully considered, not overlooked, numerous cases cited by appellants in support of their position on the point now under consideration. The trouble with all such cases from their standpoint is that they deal with devises to groups which constitute a definite class such as children or grandchildren and for that reason have no application where—as here—the devise is to heirs in fee simple. Therefore, based on the decisions and legal treatises to which we have just referred, we conclude that under the will of Charles H. Jackson the heirs of Robert S. Jackson take such portions of the real estate as the statutes of intestate succession designate and not *per capita.*

Nothing would be gained by prolonging this lengthy opinion. It suffices to say that what has been heretofore stated and held compels an over-all conclusion the trial court's judgment was not erroneous and should be upheld; and that there is nothing in the record which warrants or permits a conclusion such court erred in overruling appellants' motion for a new trial.

The judgment is affirmed.

FATZER, J., dissents: I am in accord with the court's holding in the first paragraph of the syllabus that the heirs of Robert S. Jackson, the life tenant, are to be determined by the statutes of intestate succession, but I cannot agree with the court's further holding that the heirs so determined take such portions of the real estate as the statutes designate.

Since no one questions the fact that the five children of Robert S. Jackson are his heirs at law, this dissent relates only to whether Mildred Jackson is an heir at law, and if she is, what share of the remainder estate she is entitled to receive.

At common law a spouse was not an heir, only those who were of the blood line of the decedent could be heirs. The surviving husband was entitled to estate by curtesy in his wife's estate, and the surviving wife had her right of dower in the husband's reality. In this state curtesy and dower have been abolished, and the rights of surviving spouses are regulated by the statutes of intestate suces-

sion, giving to the survivor one-half of the *deceased spouse's property* of which he or she died seized or possessed. (G. S. 1949, 59-502, 59-504, 59-505.) The surviving spouse cannot, perhaps, be said to be an heir in the strict common-law sense of the term, but the statute at least clothes such a spouse with the material attributes of an heir, and places him or her in that relation. (G. S. 1949, 59-504.) An heir at law is simply one who succeeds to the estate of a deceased person. Whether one is an heir at law is determined by statute, and the decisions and statutes of other states with respect to who are heirs, or who inherit, or what share, have little application in this state. Hence, I am in accord with the court's conclusion that Mildred Jackson is an heir of her deceased husband.

Even though Mildred Jackson is an heir of her husband, it is clear to me that the statutes of intestate succession may not be used either directly or indirectly to award her an undivided one-half interest in the remainder in fee. The testator's will in the instant case passed the whole estate. Robert S. Jackson took a legal estate and instead of taking the whole estate, he took a life estate. The remainder vested in his heirs in fee simple. The character and extent of the estate which he took was not affected in the slightest degree by the fact that he had a wife who might outlive him. The estate which he took did not survive him. He had no interest capable of inheritance and had no legal or equitable interest in the remainder in fee. After his death, by virtue of the testator's will, the whole estate vested in fee simple in his heirs and there was nothing to set apart to his widow Mildred Jackson under our statutes of intestate succession. Those statutes refer to an estate capable of inheritance from the husband and do not apply to interests in land which are extinguished and terminated by his death. (*Osborn v. Osborn*, 102 Kan. 890, 172 Pac. 23.)

The statutes of intestate succession are to be applied as of the date of the death of the life tenant to ascertain his heirs (*Jones v. Petrie*, 156 Kan. 241, 132 P. 2d 396), and the court, in concluding that Mildred Jackson took an undivided one-half interest in the fee under a *per stirpes* distribution, is extending the statutes clearly beyond their plain and unambiguous language. While those statutes may be used to determine the persons who are to take the remainder in fee under the testator's will as the heirs of Robert S. Jackson, it does not follow that they may be used to fix the shares

which those persons will take. On the contrary, those statutes determine the shares to be taken only where the deceased spouse was the owner of property which was capable of inheritance upon his death. They do not apply to interests in real estate which were extinguished and terminated by the spouse's death (*Osborn v. Osborn,* supra), or devised to his heirs under the will of another. There is nothing in the decedent's will to show that the statutes were to be used to fix the share that each heir of the life tenant would take. That being the case, Mildred Jackson stands simply as another heir of the life tenant and she may only share equally in the remainder in fee with the decedent's children. She stands in no different relation to the testator's property than any other heir of Robert S. Jackson and the statutes of intestate succession may not be used to award her an undivided one-half interest in the remainder estate under a *per stirpes* distribution.

The court refers to a statement in *Grossenbacher v. Spring,* 108 Kan. 397, 195 Pac. 884, that where lands are devised by will to any person for his life, and after his death to his heirs in fee (not restricted to heirs of his body), such a devise vests a life estate in the person so named and a remainder in fee simple in *his statutory heirs.* The statement is authority that the statutes of intestate succession may be used to identify the life tenant's statutory heirs as of the date of his death but does not purport to state, as the court holds in this case, that those statutes may be used in such a case to determine *what share* the statutory heirs take.

I would reverse the judgment of the district court and direct it to enter judgment that Mildred Jackson, as an heir of the decedent Robert S. Jackson, is entitled to one-sixth of the remainder in fee and that the five children of the decedent are each entitled to an undivided one-sixth interest.