No. 36,097

In the Matter of the Estate of R. A. Williams, Deceased. (ARTHUR HOYT et al., *Appellants,* v. ANEITA LITTLE and B. H. MAYER, as Executor of the Estate of R. A. Williams, Deceased, *Appellees.*)

(150 P. 2d 336)

Opinion filed July 8, 1944.

*Van Earl Danner,* of Ellsworth, and *James E. Taylor,* of Sharon Springs, argued the cause, and *John J. McCurdy,* of Lincoln, and *Ralph Knittle,* of Salina, were on the briefs for the appellants.

*George D. Miner* and *Paul L. Aylward,* both of Ellsworth, and *F. C. Norton,* of Salina, were on the briefs for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment of the district court affirming an order of the probate court admitting to probate the last will and testament of the late R. A. Williams of Ellsworth county.

R. A. Williams, otherwise known as Arthur Williams, was a bachelor who had resided for many years on his Ellsworth county farm of 400 acres. At the time of his death he was about eighty years of age. He was a man of considerable means, owning 640 acres of land in Lincoln county in addition to his Ellsworth county farm, and he likewise possessed considerable cash and other personalty. In his last years he lived alone in filth and wretchedness. He had an aged sister, Mrs. Minnie Hoss, who resided in Wallace county. His other relatives were nephews and nieces, the children of three deceased sisters. Two of these nephews, William C. Williams and Arthur Hoyt, had somehow fallen out of the good graces of their aged uncle.

About two miles from Williams' farm home there lived a tenant farmer, Arch Little. His family consisted of his wife, Aneita Little, and his daughter, Lola Little. On December 12, 1941, a few months before Williams' death he called at the home of Arch Little and requested him to draw his will. Little complied, and drew the will as follows:

"This is my last will and I want all my debts paid. Then I want Mrs. Aneita Little to have my farm in Ellsworth Co. in Sec 4 Twp 14 Range 6, 400 acres and $5,000. I give this to her for being so good to me and taking care of me.

"What is left of my property give ¼ to Minnie Hoss and ¼ to Ada Hoyt children ½ to Harvey Hoyt and ½ to Beatrice Nager and ¼ to Hanna Williams daughter Hanna Driscoll and ¼ to Nellie Miller's daughters that are living.

"Dont give anything to William C. Williams or Arthur Hoyt.

"I want Dr. B. H. Mayer to divide my property in my will."

Williams subscribed the will thus:

"I sign this Dec-12-1941. R. A. Williams."

Arch Little and his daughter signed the will as witnesses thus:

"We both saw Arthur Williams sign his name here and he asked both of us to sign our name.

Arch Little

Lola Little"

Arch Little kept the will in his possession until after the death of Williams which occurred on July 31, 1942, following which it was offered for probate by Mrs. Minnie Hoss (since deceased). A written defense raising various objections to its probate was filed by certain relatives who were direct heirs of the testator. These objections were that the instrument offered for probate was not the last will of the decedent, that it was not signed by him at the end thereof nor at all, that it was not signed by the decedent in the presence of each other or either of the attesting witnesses, that his signature was not acknowledged by the decedent to each or either of the witnesses, that decedent did not declare that the instrument was his last will, nor did the witnesses sign it at his request nor in his presence.

It was further alleged as an objection to the will that it was brought about by a conspiracy of Little and his wife and daughter to induce the decedent to make the purported will largely in favor of Little's wife, and thus to cheat and defraud the objecting relatives and heirs of the decedent; and that at the time of the making of the will, decedent was confined and detained in the home of Arch Little, in poor health, infirm mentally and physically, and not in sound mind nor capable of making a disposition of his property.

A further legal objection to the probate of the will was based on the challenged qualification of Arch Little as an attesting witness, on the ground that he had a beneficial interest in the devise to his wife.

The probate judge heard such evidence as the proponents of the will and the objectors thereto chose to offer, and on September 28, 1942, admitted the will to probate. .

The objectors appealed to the district court. In a new pleading, designated a petition, they raised all the issues of fact and of law which they had unsuccessfully urged in the probate court. Formal answers thereto were filed by Aneita Little and by Mayer, executor; and the cause was tried at length. The pleadings, papers and transcript of proceedings from the probate court were examined, and oral testimony was presented in behalf of the proponents of the will. Objection was again made to the competency of Arch Little as an attesting witness. This objection was overruled. A motion was then made by the appellants that Aneita Little be required to elect whether she would relinquish the devise and bequest to her and thus make her husband a competent attesting witness. This motion was overruled.

At the conclusion of the evidence for the proponents of the will, the appellants filed a demurrer thereto. This demurrer was over-ruled. Appellants offered no evidence; the trial court upheld the will, affirmed the judgment of the probate court, and directed it to proceed with the administration of the estate.

Separate. appeals are brought here by various heirs who include some who were named as beneficiaries under the decedent's will. The important question pressed on our attention is whether Arch Little was a competent attesting witness. The will devised to Aneita Little, wife of Arch Little, a 400-acre farm valued at $7,000, and a bequest of $5,000 in cash. The pertinent statute, in part, reads:

"A beneficial devise or bequest made in a will to a subscribing witness thereto shall be void, unless there are two other competent subscribing witnesses who are not beneficiaries thereunder." (G. S. 1943 Supp. 59-604.)

Appellants contend that the devise of the decedent's farm and the bequest of $5,000 to Arch Little's wife had the legal effect of making Arch Little a beneficiary of the will; that the devise to his wife created a substantial beneficial interest to himself which disqualified him as an attesting witness. Our own decisions recognize that where husband and wife are or have been residents of this state during some period of their marriage each spouse has what is called an "inchoate" interest in all the real estate of the other, even al-though such real estate may have been voluntarily conveyed by its title holder without the written consent of the other spouse. This inchoate interest does not mature in the other spouse until the death of the one who had been the title holder (G. S. 1943 Supp. 59-505); but we have repeatedly held that this "inchoate" interest of the nonconsenting spouse has sufficient potency that he may invoke the assistance of the courts for its protection. Thus in *Overman v. Hathaway*, 29 Kan. 434, a wife was sued for her refusal to join in a conveyance of land belonging to her husband which he had sold to the plaintiff. The wife had full knowledge of the contract of sale and had made no objection thereto although the circumstances were such as to require her to object if she did not approve the bargain. This court, speaking by Mr. Justice Valentine, said:

"The defendant, at the time of the contracts of sale, had an interest in the land in question. It is true that her interest in such land was only con-tingent and inchoate; but still it was an interest which might at some time become absolute and complete. (*Madigan v. Walsh*, 22 Wis. 501.) Her in-terest, we think, was undoubtedly sufficient to enable her to sue or be sued with reference thereto." (p. 437.)

In *Busenbark v. Busenbark*, 33 Kan. 572, 7 Pac. 245, Mr. Chief Justice Horton discussed the nature of a Kansas wife's interest in the real property owned by her husband thus:

"A wife residing in this state is entitled, upon the death of her husband, to the half of all the real estate owned by him during the marriage which has not been sold on judicial sale, and is not necessary for the payment of debts, and of which the wife has made no conveyance; so that there is an inchoate interest to the extent of one-half given to the wife in the real estate of the husband. It is true that this interest in the real estate of the husband is inchoate and uncertain, yet, according to the authorities, it possesses the elements of property. It is an interest and right of which she can be divested only by her consent, or crime, or her dying before her husband. It is an interest which may be, in connection with the husband, the subject of contract and bargain, and is by many of the authorities denominated a contingent but valuable interest. . . . We now go further, and declare that although the wife's right and interest in the real estate of her husband not occupied as a homestead is inchoate and uncertain, yet it possesses the element of property to such a degree that she may maintain an action during the life of her husband for its protection, and for relief from fraudulent alienation by her husband. (citation.)" (pp. 576, 577.)

See, also, *Putnam v. Putnam*, 104 Kan. 47, 52 *et seq.*, 177 Pac. 838, and citations.

The new code provision, G. S. 1943 'Supp. 59-604, quoted in part above, is somewhat different from the language of the earlier text of 1868. The former text read:

"If a devise or bequest be given to a person who is a witness to the will, and the will cannot otherwise be proved than by the testimony of such witness, the devise or bequest shall be void, and the witness shall be competent to give testimony of the execution of the will in like manner as if such devise or bequest had not been made; . . ." (G. S. 1935, 22-212.)

Can it be said that this change in the disqualification of an attesting witness who is the recipient of a devise or bequest indicates a legislative intention to alter the substance of the law on that point? In the earlier statute a devise or bequest to a witness was void unless the will was sufficiently proved by other witnesses. In the later statute a "beneficial" devise or bequest to a subscribing witness was void unless there were two other competent witnesses to the will. Does the adjective "beneficial" which qualifies the noun "devise" or "bequest" in the later text change the nature or significance of the "devise or bequest?" A devise is a testamentary gift of real property. A bequest is a testamentary gift of personal property. Any such gift would reasonably be construed to be beneficial to the testamentary donee. We can discern no distinction between a devise and

a beneficial devise, insofar as concerns the case at bar. The devise of an Ellsworth county farm of 400 acres, and the bequest of $5,000 in cash, with no restrictions attached were certainly beneficial to the devisee. However, the devise and bequest were to Aneita Little. She was not an attesting witness to the will. The devise and bequest—"beneficial" devise and bequest—were not made to Arch Little, husband of the devisee, who was the attesting witness. This court has held that—

"A husband who is one of the subscribing witnesses to a will is not disqualified from giving testimony before the probate court to establish its due execution because of the fact that his wife is a legatee." (*Lanning v. Gay*, 70 Kan. 353, 78 Pac. 810, syl. ¶ 1.)

From a perusal of the opinion in the case just cited, counsel for appellants discern a possible distinction between it and the case at bar. It is true that the opinion deals at some length with the limitations of a husband or wife to testify for or against each other, and it is not precisely clear from the opinion that the husband of the beneficiary was an attesting witness. Resort to the case-made in the archives of this court, however, leaves no doubt on that point. The pertinent part of the Lanning will read thus:

"I, Mabel Lanning, of Clay Center, . . . do make and publish this my last will and testament.

.    .    .    .    .    .    .    .    .    .    .    .

"Fifth: To my dear friend Mrs. Mary Gay (wife of Frank V. Gay) of Clay Center aforesaid, I give and bequeath the sum of One Hundred dollars ($100) to be by her expended as and for such purposes as by me privately directed.

"Sixth: All the rest and residue of my said estate both real and personal of which I may die seized I give, devise and bequeath to my said friend Mrs. Mary Gay."

Then followed the usual testimonium clause which was signed thus:

"MABEL LANNING."

Then came the usual recitals of the attestation clause by subscribing witnesses and signed thus:

"HY W. STACKPOLE
"FRANK V. GAY."

The trial court held that Frank V. Gay was not a competent witness and that the will of Mabel Lanning was not executed in conformity with the statutes. But the trial court further held that John B. Lanning, father and sole heir of Mabel Lanning, with

knowledge of the facts constituting such invalidity in attestation, "waived all objection, on the ground of the invalidity of said will, by reason of imperfect attestation, accepted .the sufficiency of probate thereof, and is now estopped from asserting the invalidity of said will on that ground." Judgment was entered for defendants.

It was on such a record and such an appeal, which squarely raised the question of the qualification of Frank V. Gay as an attesting witness to the will which bequeathed $100 in cash to his wife and named her as residual beneficiary of the remainder estate of the testatrix, that the rule in *Lanning v. Gay* quoted above was announced. An examination of the briefs in that case (in the bound files of the state library) clearly shows that the qualification of Frank Gay as an attesting witness was urged as of prime importance in the action. Eminent counsel appeared on both sides—two of them who opposed each other served this state as attorneys-general. The trial court held that—

"Frank V. Gay was not a competent witness for the attestation of the will in question, and that said will was not executed or attested in conformity with the statutes of Kansas." (Case made p. 476.)

However, the trial court also held that for reasons which are irrelevant here Lanning was estopped from asserting the invalidity of the will, and it was on the latter ground that this court affirmed the judgment.

But it is clear that this court did not agree with the trial judge's conclusion of law that Frank Gay was not a competent attesting witness, and syllabus 1 quoted above is squarely to the contrary.

The rule announced in *Lanning v. Gay* has stood unmodified for forty years. Until the present appeal, it has not been questioned. In 1 Bartlett's Kansas Probate Law and Practice, 318, the rule announced in *Lanning v. Gay* is regarded as the settled law, not only in this state but in some other jurisdictions as indicated in the notes to Bartlett's text. Thus in *In re Holt's Will,* 56 Minn. 33, 57 N. W. 219, 22 L. R. A. 481, 45 Am. Rep. 434, Bartlett's annotation to section 335 of his text reads:

"The only devises or legacies which the statute annuls are those made to subscribing witnesses, which clearly does not apply to the husband or wife of a legatee. This construction is in conformity with the spirit of modern legislation on the general subject of the rights of husband and wife."

The diligence of counsel for the present litigants has brought together respectable authorities which hold that the spouse of a

beneficiary of a will is not a competent witness, and our attention is directed to 68 C. J. 679-680, 28 R. C. L. 136, and 1 Page on Wills, Lifetime ed., 615-619, where the former state of the law and its later development, sometimes by statute but frequently by matured change of judicial viewpoint, are discussed. See annotation to *Hayden v. Hayden*, 107 Neb. 806, 186 N. W. 972, in 25 A. L. R. 308-312; *Gore v. Dace*, 157 Miss. 221, 127 So. 901; *In re Hartman's Estate* (Cal. App.), 68 P. 2d 744.

Space will not permit quotation from these texts and authorities from other jurisdictions, but it is a fair summary of them to say that the modern tendency is to concede rather than deny the qualification of one spouse to serve as an attesting witness in a will where the other spouse is a beneficiary thereof. Cynical reformers of half a century ago used to say that the law of evidence was just a treatise on the exceptions to the rules touching the inadmissibility of testimony!

We cannot doubt that the want of any later case in our own reports, together with the modern tendency to relax the old rules which stressed the inadmissibility of evidence strengthens the view that the rule announced in the first paragraph of the syllabus of *Lanning v. Gay* should be adhered to. Moreover, in drafting and enacting the new probate code it is difficult to believe that the many talented lawyers in and out of the legislature who participated in that notable work would have permitted the rule of *Lanning v. Gay* to stand unmodified, if they were not satisfied with the clear-cut statement of the law as announced in that case. This court therefore adheres to and applies to the case at bar the rule of law announced in the first section of the syllabus in *Lanning v. Gay*, 70 Kan. 353, 78 Pac. 810.

Noting other objections to the sufficiency of the will, the contention is made that the testimonium and attestation clauses of the will do not conform to the formalities used by good lawyers. But the statute does not prescribe those formalities. It merely provides that—

"Every will, . . . shall be in writing, and signed at the end thereof by the party making the same, . . . and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same." (G. S. 1943 Supp. 59-606.)

In the case at bar the testator did sign the will at the end thereof, and the attestation is that both the subscribing witnesses saw him

sign his name thereto. We think it must be held that this was a sufficient compliance with the statute. (*In re Estate of Wallace,* ante, p. 633, 149 P. 2d 595, decided June 10, 1944; 1 Bartlett's Kansas Probate Law and Practice, 325-333. See, also, *Kitchell v. Bridgeman,* 126 Kan. 145, 267 Pac. 26.)

Error is also urged on the overruling of appellants' motion that Aneita Little be required to elect whether she would relinquish the devise and bequest to her and thus make her husband a competent attesting witness to the will, but since we are holding that her husband was a competent attesting witness, the ruling on appellants' motion was obviously correct.

And while it is true that in the district court appellants pleaded various objections to the probate of the will, they offered no evidence to support their objections. They relied altogether on their demurrer to the evidence adduced by its proponents; and without recapitulating that evidence we feel bound to hold that appellants' demurrer to its sufficiency was properly overruled.

The judgment is affirmed.