(651 P.2d 961)
No. 53,337

EDITH PALMER, As Executrix of the Estate of CELOUS E. BRANDEN-
BURG, Deceased, *Plaintiff-Appellant,* v. ORVILLE LEROY BRAN-
DENBURG, ONETA RUTH MAKIN, IRENE ADA EDGAR and MABEL
ORRA HAZEN, *Defendants-Appellants,* and MELVIN W. BRANDEN-
BURG, ORRA MAE LINDBERG, DOROTHY A. NORMAN, FLOYD W.
BRANDENBURG, LORENE CAMPBELL, AVIS ELAINE DECKER, EMMA
LOU WENDLER, DAVID DEAN BRANDENBURG, ROBERT DALE BRAN-
DENBURG, ETHEL BRANDENBURG, FRED HERMAN KRUG, WESLEY W.
BECKER, DONALD FREDERICK KRUG and LILLIAN M. BECKER,
*Defendants-Appellees.*

Opinion filed
October 7, 1982.

*Robert L. Earnest,* of Russell, for appellants.
*Richard M. Driscoll,* of Driscoll and Driscoll, of Russell, for appellees Becker.
*Michael S. Holland,* of Russell, for appellees Krug.

Before FOTH, C.J., REES and SPENCER, JJ.

REES, J.: This is an action to determine the nature and duration
of an oil and gas interest reserved in a judicial partition of land.

In 1964, upon request of one co-owner, the Russell County
District Court ordered partition of the co-owners' interests in and
to the West Half of Section 20, Township 14 South, Range 14
West (West Half), and other land in Russell County. There was a
sheriff's sale. Fred H. Krug and Donald F. Krug purchased the
Northwest Quarter of Section 20 (Northwest Quarter) and Wesley
and Lillian Becker purchased the Southwest Quarter of Section
20 (Southwest Quarter).

At the time of the partition order, the co-owners held the fee
title in and to the surface of and the oil and gas underlying the
West Half subject to separate oil and gas leases covering the two
constituent quarter-sections. The partition order reserved an oil
and gas interest to the co-owners. Production continues to the

present on the Northwest Quarter. The oil and gas lease on the Southwest Quarter has terminated; the pumps have been pulled, the wells plugged and abandoned, and the lease has been released of record.

Celous E. Brandenburg (Brandenburg), one of the former co-owners, brought this action in 1978 seeking a declaration of his interest in and to the West Half. Brandenburg contended, on the basis of the partition order and subsequent reiteration of the reservation in the sheriff's deeds, that he is an owner of the oil and gas under all of the West Half so long as oil or gas is produced from anywhere on the half-section. The Beckers and the Krugs contended the reservations set out in the sheriff's deeds were dependent on continued production of oil or gas on each quarter-section under its specific lease. Because the oil and gas lease on the Southwest Quarter had terminated, the Beckers claimed ownership of all oil and gas under the Southwest Quarter.

The trial court found Brandenburg had a separate term royalty interest in each quarter-section. It further found that, when oil production on the Southwest Quarter ceased, Brandenburg's interest in that quarter-section terminated. Brandenburg's executrix and those defendants who were co-owners of the West Half prior to partition appeal the decision of the trial court.

Because this case is presented on stipulated facts and documentary evidence, we are afforded the same opportunity to consider the evidence as the trial judge who entered the order now on appeal. *Cosgrove v. Young,* 230 Kan. 705, 716, 642 P.2d 75 (1982); *Crestview Bowl, Inc. v. Womer Constr. Co.,* 225 Kan. 335, 336, 592 P.2d 74 (1979). The matter before the trial judge and now before us is construction and interpretation of the 1964 partition decree. That task is accomplished by determination of the intent of the court rendering the decree. *Stratmann v. Stratmann,* 204 Kan. 658, 661, 465 P.2d 938 (1970).

The issues on appeal are (1) whether the March 9, 1964, order of partition in the case of *Brandenburg v. Brandenburg,* Case No. 9831 in the District Court of Russell County, Kansas, reserved to Brandenburg and his co-owners a royalty interest or a mineral interest; and (2) the duration of the reserved interest.

The journal entry of partition provides in pertinent part:

"3. [Brandenburg and his co-owners] . . . are the owners of and entitled to

the possession of the surface rights in and to [the West Half of Section 20] . . . .

"4. . . . [T]he *present oil and gas minerals and mineral rights, and the reversionary rights thereto* upon the cessation of production . . . are owned by [Brandenburg and his co-owners] in and to the following respectively described lands, in the proportions set opposite their names, as follows:

"A.  The *mineral rights* as to the West Half (W/2) Section Twenty (20) . . . for so long as oil or gas or either of them are produced, under the presently existing oil and gas leases are owned as follows:

[Co-owners listed individually with fractional interest set opposite each.]

The *oil and gas minerals and mineral rights* in and to the [West Half of Section 20] upon cessation of production:

[Co-owners listed individually with fractional interest set opposite each.]

"B.  [Oil, gas and mineral interests in other land, by legal description, omitted.]

"5. . . . [P]roduction of oil and/or gas is presently being obtained from the said West Half (W/2) of Section Twenty (20) . . . .

. . . .

"11.  The court further finds that said described real estate is not the homestead of any of the co-owners thereof and is subject to and susceptible of being partitioned; that plaintiff desires to have and own his share therein in severalty and that the same should be partitioned in the manner provided by law, *reserving, however, to the co-owners thereof,* in the proportions of their respective ownerships, *all of the oil and gas,* or either of them, *which may be produced, saved and marketed* from the following respectively described lands, situate in Russell County, Kansas, to-wit:

"A.  The West Half (W/2) of Section Twenty (20), Township Fourteen (14) South, Range Fourteen (14) West of the 6th P.M.;

"B.  [Omitted.]

for so long after judgment in partition as oil or gas, or either of them be produced from the respectively described lands or the respectively described premises are being developed or operated under present leases thereon for oil and gas purposes.

. . . .

"IT IS . . . ORDERED, ADJUDGED AND DECREED that [Brandenburg and his co-owners] . . . are owners of the surface rights and the *oil and gas mineral rights* in and to . . .

"A.  The West Half (W/2) of Section Twenty (20) . . .

. . . .

in the proportions set opposite their respective names as hereinabove stated.

. . . .

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED . . . that the property previously described should be partitioned . . . and WILLIAM H. OCHS, EDWIN W. OLSEN and WILLIAM F. BOXBERGER . . . are hereby appointed as commissioners in partition to make partition and division in kind of [the W/2 of Section 20] subject to *the aforesaid reservation* of oil and gas minerals . . . but in the event the same cannot be partitioned in kind . . . [the] commissioners shall value and appraise the [W/2 of Section

20], subject to *the aforesaid reservation of oil and gas minerals* . . . in the event no [co-owner's] election be filed or in the event two or more elections be filed in opposition to each other, then . . . [the W/2 of Section 20] shall be sold, subject to *the aforesaid reservation of oil and gas minerals* . . . ." (*Emphasis* added.)

As it should, the language in the order of sale, journal entry of confirmation of sheriff's sales and sheriff's deeds is similar to that emphasized in paragraph 11 of the journal entry.

We will address the issues in reverse order. The parties do not argue determination of the nature of the reserved interest governs its duration.

The duration of the reserved interest is expressed in the journal entry of partition in the following words:

". . . for so long . . . as oil or gas, or either of them be produced from the respectively described lands or the respectively described premises are being developed or operated under present leases thereon for oil and gas purposes."

The defendants argue each quarter-section, because subject to a separate lease at the time of partition, must be considered separately in determining the time of termination of the reserved interest in that quarter-section. Brandenburg argues the plain language of the partition order refers to the half-section rather than separate quarter-sections.

The West Half is the relevant tract of land described in the journal entry; it is described there by legal description. Although our construction is controlled by the journal entry, reference to the half-section is repeated in the sheriff's deeds transferring title to each separate quarter-section. There is no language in the journal entry on which there can be predicated a division of the half-section into quarter-sections for the purpose of determining the duration of Brandenburg's interest. The language of the journal entry simply and clearly states Brandenburg's interest is in and to the entire West Half. There is no room to read it otherwise.

Defendants argue that both production and development must be limited to the "present leases" and that plaintiff's interest terminates with the expiration of each lease. Neither contention is tenable. The journal entry says Brandenburg's interest is perpetuated by (1) production or (2) development under the "present leases." Defendants would have us read the habendum clause: "for so long . . . as oil and gas . . . be produced from

the respectively described lands *under the present leases* or the respectively described premises are being developed or operated under present leases." This would do violence to the wording of the document and would be inconsistent with the rule that a determinable term interest, whether mineral or royalty, perpetuated by production is perpetuated by production anywhere on the premises. 2 Williams and Meyers, Oil and Gas Law § 334.9 (1981); *Stratmann v. Stratmann,* 204 Kan. at 664-665; *Baker v. Hugoton Production Co.,* 182 Kan. 210, 212, 320 P.2d 772 (1958).

When *Classen v. Federal Land Bank of Wichita,* 228 Kan. 426, 617 P.2d 1255 (1980); *Friesen v. Federal Land Bank of Wichita,* 227 Kan. 522, 608 P.2d 915 (1980); *Smith v. Home Royalty Association, Inc.,* 209 Kan. 609, 498 P.2d 98 (1972); *Stratmann v. Stratmann,* 204 Kan. 658; and *Dewell v. Federal Land Bank,* 191 Kan. 258, 380 P.2d 379 (1963), are analyzed and read together, we learn that where a defeasible term oil and gas interest is perpetuated by production, production from anywhere on the premises subject to the interest perpetuates the interest in and to the whole premises and if the land in which the interest is held is partly included in a unitized production unit, "off tract" production within the unit perpetuates the interest as to the acreage within the unit. Compare, *Somers v. Harris Trust & Savings Bank,* 1 Kan. App. 2d 397, 566 P.2d 775 (1977). Our case law that production anywhere on the premises perpetuates the interest as to the entire premises is clear and consistent. See, *e.g., Classen v. Federal Land Bank of Wichita,* 228 Kan. 426; *Stratmann v. Stratmann,* 204 Kan. 658; *Baker v. Hugoton Production Co.,* 182 Kan. 210.

We conclude and hold termination of the oil and gas leasehold interest in the Southwest Quarter did not terminate Brandenburg's reserved interest as to any part of the West Half.

Distinction between a royalty interest and a mineral interest has been the subject of judicial inquiry and decision. *E.g., Cosgrove v. Young,* 230 Kan. at 706-713; *Corbin v. Moser,* 195 Kan. 252, 403 P.2d 800 (1965); *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 368 P.2d 19 (1962); *Froelich v. United Royalty Co.,* 178 Kan. 503, 290 P.2d 93 (1955); *Lathrop v. Eyestone,* 170 Kan. 419, 227 P.2d 136 (1951). The distinction is well established. A "royalty interest" refers to the right to share in the production of oil and gas at severance. It is personal property.

A "mineral interest" refers to oil and gas in place. It is a real property interest. See, *e.g., Cosgrove v. Young,* 230 Kan. at 708; *Stratmann v. Stratmann,* 204 Kan. at 662; *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. at 130-131.

In 1964, was it the trial court's intent to reserve to Brandenburg and his co-owners a royalty interest or a mineral interest? We have nothing to guide us other than what is found within the four corners of the journal entry of partition.

In determining the interest reserved, we look to the language used as well as to language not used in the reservation. The words "produced, saved and marketed," used singly and in combination, indicate reservation of a royalty interest. 1 Williams and Meyers, Oil and Gas Law § 304.7 (1981). See, *e.g., Barker v. Levy,* 507 S.W.2d 613, 617 (Tex. Civ. App. 1974); *Miller v. Speed,* 248 S.W.2d 250, 252 (Tex. Civ. App. 1952). Language associated with the reservation of a mineral interest includes reference to oil, gas or other minerals in and under the land, to a right of ingress and egress, to a right to operate or develop, or to a right to lease production rights. *Cosgrove v. Young,* 230 Kan. at 712-713; *Corbin v. Moser,* 195 Kan. at 257. Defendants note none of this latter language is in the wording of the reservation.

Prior to the partition, the co-owners held a classic oil and gas mineral interest in and to the West Half. Were it not for the language of paragraph 11 of the journal entry of partition, it is clear the co-owners' prior mineral interest was wholly and unqualifiedly reserved to them. The co-owners' mineral interest prior to partition sale was described as "the oil and gas minerals and mineral rights," "the mineral rights," and "the oil and gas mineral rights." All mention in the journal entry of partition to the reserved interest, other than what is said in paragraph 11, refers to "the oil and gas minerals."

There is nothing within paragraph 11 directly and affirmatively stating or indicating the reservation to be a royalty interest or an interest in oil and gas in place. Paragraph 11 identifies the reservation simply as "all of the oil and gas . . . which may be produced, saved and marketed."

We have reviewed the case law cited to us by the parties, as well as other relevant case and treatise authority developed in our research. The case before us apparently is the sole instance, at least in reported Kansas cases, involving the grant or reservation of *all* oil and gas, or other minerals, produced.

The parties do not disagree with the oft-stated principle that a royalty interest is a right to *share* in production. If sharing in production is a necessary element or feature of a royalty interest, as we believe it is, the reserved interest here cannot be a royalty interest. Paragraph 11 does not provide that Brandenburg and his co-owners share in the produced oil and gas. They are to have it all.

The closest case we have found is *Brooks v. Mull,* 147 Kan. 740, 78 P.2d 879 (1938). There, a warranty deed reserved to the grantor "an undivided one-half interest in and to all of the oil, gas, and, or, other minerals that may be produced." 147 Kan. at 741. It was held the grantor and grantee each had as much interest in the minerals underlying the land as did the other; each had the same and equal right to lease for exploration and development, to decline to grant an oil and gas lease, to prescribe the conditions of a lessee's delay in drilling without forfeiture (delay rental), and to receipt of bonus money. Whether the grantor had the right of entry to explore and produce was not decided. 147 Kan. at 743, 744-745. It has been observed *Brooks* neither said a lessee under the grantee could not drill nor did it deal with the elements of accounting for one-half the total production obtained by such a lessee (*Krug v. Krug,* 5 Kan. App. 2d 426, 430, 618 P.2d 323 [1980]); *e.g.,* whether the grantor would take one-half the production free of or less drilling and operating costs. *Brooks* can only be read to have held that the grantor's reserved interest was an undivided one-half mineral interest — one-half the minerals *in place* whether or not with the right of entry to remove them.

Somewhat representative of our cases construing the nature of the interest as a royalty interest or a mineral interest is *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125. In that case, the reservation in a warranty deed read:

" ' . . . excepting and reserving with right of ingress and egress, an undivided ¼ of the landowner's ⅛ royalty, or, 1/32 of the interest in and to all oil, gas or other minerals . . . in or under the said land . . . . The said royalty reservation shall not be participating in bonuses or rentals, but shall be participating in other rights, royalties and other benefits accruing under any existing or future oil, gas or mineral lease while the said royalty reservation is in full force and effect.' " 189 Kan. at 127.

In addressing the question of the nature of the interest reserved, the familiar observations were noted:

"[T]he term 'royalty' has reference to a right to *share* in production of oil and gas at severance; it is personal property, and does not include a perpetual interest in the oil, gas and other minerals in and under the land. The term 'mineral interest' means an interest in and to oil and gas in and under the land and constitutes present ownership of an interest in real property." 189 Kan. at 130-131. (Emphasis added.)

Then, upon discussion of indicia and incidents of royalty and mineral interests and their application under the reservation language, it was held the interest reserved was a fractional mineral interest.

Paraphrasing language in *Stratmann v. Stratmann,* 204 Kan. at 663, we find, in substance, there was reserved to Brandenburg a mineral interest in a 320 acre tract perpetuated by production regardless of the fact two leases covered the minerals. The only condition necessary to perpetuation of the interest was and is continued production. One producing well on the half-section is sufficient to perpetuate the interest.

We conclude the reserved interest of Brandenburg and his co-owners, now held by them or their successors or assigns, is a mineral interest in and to the entire West Half. It is a defeasible term interest perpetuated by production on the Northwest Quarter. Cessation of production on and termination of the lease covering the Southwest Quarter did not terminate the reserved interest as to that quarter-section.

We do not consider that we now have before us the question of where, as between the parties, the rights to bonus payments and delay rentals lie in the event of re-leasing of the Southwest Quarter. As to the Southwest Quarter, we do not consider that we have before us the question of who has the power to execute an oil or gas lease, or who has drilling rights and the proper accounting for production therefrom. If these questions are presently justiciable, they have neither been presented in the trial court nor briefed and argued on appeal; it would be inappropriate for us to now undertake their resolution.

Reversed.