(694 P.2d 1310)
No. 56,223

LEONARD DRACH, *Plaintiff-Appellee*, v. LAVERN ELY, EUGENE ELY, ORVILLE STROBEL, MARILYN STROBEL, SHIRLEY BURROWS, HOMER BURROWS, WILMA TINDEMAN, *Defendants*, and ALICE HARTNETT, GERALD HARTNETT, and NADINE BERUBE, *Defendants-Appellants*.

Opinion filed February 7, 1985.

*James T. McIntyre*, of Turner and Boisseau, Chartered, of Wichita, and *Casey R. Law*, of the same firm, of Great Bend, for the appellants.

*Timothy R. Keenan*, of Keenan, Mauch & Keenan, P.A., of Great Bend, for the appellee.

Before REES, P.J., MEYER, J., and JOHN W. BROOKENS, District Judge Retired, Assigned.

MEYER, J.: This is an action by appellee Leonard Drach (Drach) to quiet title to the "NW 1/4 of Section 13, Township 22, Range 13, in Stafford County, Kansas" (hereinafter NW 1/4-13). Defendants Alice Hartnett, Gerald Hartnett, and Nadine Berube (appellants) claim an interest in and to the oil, gas and minerals under this tract. Drach's Motion for Summary Judgment was granted, hence this appeal.

Martha Siefkes (Siefkes), who had inherited the NW 1/4-13 from her father, Fritz Mettscher, conveyed it to Drach by warranty deed. This deed, however, contained the following language below the legal description of the property:

"This being subject to Mineral Royalty deeds now of record and subject also to the terms of the Last Will and Testament of Fritz Mettscher, deceased.

". . . .

". . . subject only to Mineral Royalty deeds of record and Will stipulations as stated above . . . ."

At issue herein is what interest in NW 1/4-13 was conveyed by Siefkes to Drach; specifically, whether or not Drach obtained the mineral interests by this conveyance.

Fritz Mettscher died September 20, 1938. His last will and testament was probated, and the order of final settlement was entered on November 13, 1939. Although the Kansas probate code of 1939 applies to this estate, and therefore the order of final settlement controls the flow of title from decedent (K.S.A. 59-2602; and *Bindley v. Mitchell*, 170 Kan. 653, 657, 228 P.2d 689 [1951]), that order merely decrees that decedent's real property will pass to those persons and in such proportions as designated in paragraph 3 of the will. Paragraph 3, in turn, decrees that the devises therein are "subject to the reservation made in paragraph two." We thus must interpret decedent's will to determine what interest in the property Siefkes took and in what manner she took it. Thereafter we will consider what interest was conveyed by her deed to Drach.

Paragraph 2 of the Mettscher will provides as follows:

"I give, devise and bequeath the oil, gas and other minerals in and under and that may be produced from the hereinafter described farm lands which I now own, to my six children, in the proportions as hereinafter set forth, to-wit:

To my son, F. H. Mettscher, a one-sixth interest;
To my daughter, Marie Strobel, a one-sixth interest;

To my son, Henry Mettscher, a one-sixth interest;
To my daughter, Wilhelmina Kues, a one-sixth interest;
To my daughter, Martha Siefkes, a one-sixth interest;
To my daughter, Ida Cadman, a one-sixth interest;

"*It is my will and intention that the mineral rights herein devised shall be and include only the oil, gas or other minerals which may be produced from said premises, and shall not, in any manner, be interpreted or construed as including any of the oil, gas or mineral lease rentals, delay rentals or bonuses which may be payable under any leases upon said real estate;* it being my will and desire that all of the rentals, delay rentals and bonuses payable under any leases upon said real estate shall be payable to the person to whom the specific real estate upon which such rentals are paid is hereinafter given and devised." (Emphasis added.)

Paragraph 3 of the will states in pertinent part:

"3. . . . I give, devise and bequeath, subject to the reservation made in paragraph two of this my Last Will and Testament, my farm lands to my children, as here immediately set forth, to-wit:

. . . .

"To my daughter, Martha Siefkes, I give the NW 1/4 of Section 13, Township 22, Range 13, in Stafford County, Kansas, and if my said daughter pre-decease me, then I give the said quarter section of land to her children:"

As paragraph 3 of the will is subject to paragraph 2, it is paragraph 2 which controls whether royalty or mineral interest was obtained by Siefkes under the will.

The trial court determined that Siefkes, in the italicized part of paragraph 2 of the will, obtained only a royalty interest and that this interest violated the rule against perpetuities. The trial court further determined that the subsequent conveyance to Drach gave him a fee simple title to the NW 1/4-13, including the mineral interest in, on, and under the same. We agree.

We italicized part of paragraph 2 of decedent's will in order to clearly set it apart from the final part of that paragraph. The first part, we conclude, refers to a royalty interest, while that part of the paragraph which follows the italicized part refers to a mineral interest. We will expound on the reasons for this conclusion.

Language associated with the granting of a mineral interest includes reference to oil, gas and other minerals "in and under" the land, to the rights of ingress and egress over the land, to enter the surface land to operate or develop, to lease production rights, and to participate in bonuses and delay rentals. See *Cosgrove v. Young*, 230 Kan. 705, 712-13, 642 P.2d 75 (1982), and numerous cases detailed therein. See also *Palmer v. Brandenburg*, 8 Kan.

App. 2d 154, 159, 651 P.2d 961 (1982), *rev. denied* 233 Kan. 1092 (1983).

The true distinction between a royalty and a mineral interest is that the owner of a royalty interest owns only those minerals which are brought to the surface of the land, that is, "what is produced," while the mineral interest owner possesses the minerals in place. This is why the mineral interest owner has the right of ingress and egress; that is, the right to explore for minerals, and, when found, to develop and remove them. The mineral interest owner also has the leasing power by the use of which he can negotiate for a bonus, and he can grant delays in drilling requirements in exchange for the receipt of delay rentals. All three of these indicia—ingress and egress, delay rentals, and bonuses—are thus clearly compatible with mineral interest ownership, but have nothing to do with the ownership of royalty. In the final analysis, once oil and gas reach the surface, they become subject to royalty ownership. On the other hand, just as clearly, the owner of the mineral interest in and to the oil and gas owns the same wherever located. The owner of the mineral interest also may own the royalty interest, and in fact does own it unless it has been sold to someone else; and can receive title thereto by use of the term "mineral interest." The converse is not true; that is, the owner of a royalty interest—expressed only as such without qualifying expletives—does not by use of that term acquire any interest whatever in and to minerals "in place."

The foregoing distinction between royalty and mineral interests requires that each case be determined on a case by case method. As was said in *Cosgrove*, 230 Kan. at 706:

"In determining the type of interest conveyed, we are not governed by the title affixed to the conveying document, but will look instead to the language of the contract contained in its four corners and from there find the intention of the parties. [Citation omitted.]"

The devise in the instant case makes reference to mineral rights "in and under" the land, but otherwise is devoid of references to other of the above-mentioned language generally associated with the transfer of a mineral interest. The testator, in fact, by expressly naming them, states that the indicia of mineral interests does *not* go with the interest he thereby grants.

It seems clear to us that the testator intended that Siefkes and her five siblings should each receive an undivided 1/6th *royalty*

interest only in all of the real property of which he died seized. It is equally clear he intended that the *mineral interest* under each tract would go to the respective devisee thereof. One must ask what possible reason he would otherwise have had to use the starkly different language in the italicized part of the last paragraph of paragraph 2 of his will, than he used in the remainder of that paragraph.

While the phrase "in and under" is indicative of a mineral interest, the phrase "may be produced from" is more compatible with a royalty interest. *Magnusson v. Colorado Oil & Gas Corp.,* 183 Kan. 568, 575, 331 P.2d 577 (1958); *Shaffer v. Kansas Farmers Union Royalty Co.,* 146 Kan. 84, 91-92, 69 P.2d 4 (1937). When both such terms are used in the same grant, however, resort must be had to other language in the grant to determine what was, in fact, transferred.

The Kansas Supreme Court has, on numerous occasions, reiterated the distinction between minerals in place and a royalty interest. For instance, in *Lathrop v. Eyestone,* 170 Kan. 419, Syl. ¶¶ 1 and 2, 227 P.2d 136 (1951), it was held:

"A mineral deed is one which makes a severance, from the fee, of a present title to minerals in place. It is actually a realty conveyance."

" 'Royalty' in its ordinary meaning is that part of oil and gas payable to the lessor by the lessee out of oil and gas actually produced and saved. It is the compensation to the lessor provided in the lease for the lessee's privilege of drilling and producing oil or gas and does not include a perpetual interest in and to oil and gas in place. It is not uncommon to find 'royalty' shortly defined as 'a share' in production 'paid.' "

In the instant case, the testator stated that what he was granting (in the italicized part of paragraph 2) would "include *only* the oil, gas or other minerals *which may be produced from* said premises." By such language he clearly limits the interest transferred to a royalty. Moreover, the testator then, specifically, states that lease rentals, delay rentals, and bonuses—those things normally associated with mineral interests—were *not* transferred. By specific omission of these mineral interest indicia, he most certainly intended, up to that point in his will, to grant a royalty interest only. Furthermore, the testator thereupon (in the last—the unitalicized—part of paragraph 2) grants to each of his children what we conclude he intended was a *mineral interest* in and to each of the various tracts. This is particularly apparent

when read in conjunction with his devise of the specific tracts of land in paragraph 3 of his will. Clearly he intended that each of his children receive a royalty interest in and to all of the land of which he died seized, but wanted each to own the mineral interest in and to the land he specifically devised to each. Any other interpretation defies reason.

In sum, the testator (in the italicized part of the last paragraph of paragraph 2 of his will) made no provision for ingress or egress; removed any claim the devisees may have had to delay rentals, lease rentals, and bonuses; and stated the devisees were to receive *only* the minerals "produced from" the premises. The result is that all elements normally serving as indicia of mineral interests are gone, with the exception of the phrase "in and under" used in the first paragraph of paragraph 2 of the will. Thus, in the concluding part of paragraph 2, together with paragraph 3, he devised the fee simple title to Siefkes. So far as the attempted grant of a royalty interest to Siefkes is concerned, it is for all practical purposes, mere surplusage.

Thus, when Siefkes conveyed the NW 1/4-13 to Drach by warranty deed, she conveyed to him all her rights to the property except what she deemed she had been separately given under her father's will, namely a royalty interest. But what royalty interest did Siefkes have? We submit that she had no such *separate* interest (apart from her full fee simple ownership), since the italicized part of paragraph 2 of decedent's will violates the rule against perpetuities. This violation of the rule occurs because it cannot be said that the *royalty* interest will vest within a life or lives in being plus 21 years. As was explained in *Cosgrove*, 230 Kan. at 714-15:

" ' "One of the essential elements of the rule against perpetuities is that at the time the future interest is created, it must appear that the condition precedent to vesting must necessarily happen, if it happens at all, within the period prescribed by the rule. . . . A possibility, or even a probability, that the interest or estate may vest within that time is not enough, for, it is said, the question of probabilities does not enter into the equation. If by any conceivable combination of circumstances it is possible that the event upon which the estate or interest is limited may not occur within the period of the rule, or if there is left any room for uncertainty or doubt on the point, the limitation is void." '

. . . . .

". . . Naturally, if no future oil and gas leases are made and executed, there would never be a vesting of title to any royalty interest. If it is not certain the vesting will occur within the time stated in the rule, then the rule has been violated and the conveyance is void."

And even though we do not deal with an oil and gas lease *per se* in the instant case, the strength with which the rule is applied is demonstrated by the language of the *Cosgrove* court which immediately follows the above quote from that court:

"Even if an oil and gas lease were required to be executed within the time prescribed by law, there would still be no vesting of title until royalty becomes due and payable to the grantor or his successor. The execution and delivery of an oil and gas lease does not insure that there will ever be any production attributable to the lease." *Cosgrove*, 230 Kan. at 715.

If Siefkes did not possess any *separate* royalty interest, there was nothing to be excepted from the granting clause of the deed.

Moreover, although the deed to Drach uses the words "subject to Mineral Royalty deeds now of record," this does not reserve anything to Siefkes or her heirs since it has not been alleged there are any such deeds of record.

In the final analysis, however, it matters not what Siefkes *intended* to convey to Drach; what she did was to convey fee simple title to him. This is so because of the foregoing analysis coupled with the fact that the warranty deed to Drach, though less than artfully drawn, is not ambiguous.

It follows, therefore, that Siefkes reserved nothing in her deed to Drach, and that the trial court was correct in its judgment that Drach took fee simple title to the NW 1/4-13 by his deed from Siefkes, and in quieting title thereto in Drach.

Affirmed.

BROOKENS, J., concurring: This case, once again, points out the necessity for scriveners of wills and of final decrees in probate cases to write with clarity and specificity.

The cardinal rule in the construction of a will is that the intention of the testator must be ascertained, and the will so construed to carry out that intention. *In re Estate of Berryman,* 226 Kan. 116, 595 P.2d 1120 (1979); *In re Estate of Wernet,* 226 Kan. 97, 596 P.2d 137 (1979); *Giese v. Smith,* 195 Kan. 607, 408 P.2d 687 (1965); *In re Estate of Weidman,* 181 Kan. 718, 314 P.2d 327 (1957); *In re Estate of Dees,* 180 Kan. 772, 308 P.2d 90 (1957).

A careful study of the subject will, it seems to me, compels the conclusion the testator intended to give each of his six children a

specific quarter-section of land, together with the sole right to lease that specific quarter-section of land for oil and gas, receive bonus payments, receive lease rentals, receive delay rentals, control access to the specific land, and control the right to drill on the specific land. But, if oil or gas were produced, brought to the surface and severed from the land, then all of the six children would share equally in that windfall.

Otherwise, why would the testator, in paragraph 2, state: "It is my will and intention that the mineral rights herein devised shall be and include *only* the oil, gas or other minerals which may be produced"? (Emphasis supplied.)

In my view, use of the word "devised" as opposed to "bequeathed" is neither significant, enlightening, nor controlling in this will.

I would affirm the trial court.

REES, J.: I dissent.

This quiet title action concerns the Northwest Quarter of Section Thirteen, Township Twenty-two, Range Thirteen (NW/4 13-22-13) in Stafford County, Kansas (Northwest Quarter), land owned by Fritz Mettscher prior to his death on September 20, 1938.

Testamentary transfer of all interests in the Northwest Quarter occurred according to the following will language:

> "2. I give, devise and bequeath the oil, gas and other minerals in and under and that may be produced from the hereinafter described [six quarter sections] . . . which I now own, to my six children [in equal shares] . . . .
> "[T]he mineral rights herein devised shall be and include only the oil, gas or other minerals which may be produced from said [six quarter sections] and shall not . . . [include] any of the oil, gas or mineral lease rentals, delay rentals or bonuses . . . payable under any leases . . .; all of the rentals, delay rentals and bonuses payable under any leases . . . shall be payable to the person to whom the specific real estate upon which such rentals are paid is . . . given and devised.
> "3. I give, devise and bequeath, subject to the [foregoing] reservation . . .
> . . . .
> To my daughter, Martha Siefkes the [Northwest Quarter] . . . ."

The will made like provision for each of Martha Siefkes' (Martha's) five brothers and sisters, two of whom were Marie Strobel (Marie) and Ida Cadman (Ida). A specific quarter section was designated for each brother and sister under Paragraph 3 of the will.

The appellants are successors to Marie and Ida's interests. Plaintiff is Martha's successor in interest by assignment. The scope of the reservation or exclusion from Martha's assignment to plaintiff is not at the foundation of this case. Plaintiff is treated as having succeeded to all of Martha's right, title and interest in and to the Northwest Quarter.

The dispositive issue is whether Marie and Ida became owners of fractional mineral interests in and to the Northwest Quarter by operation of Fritz Mettscher's will. Under the majority opinion, they did not. I disagree.

The majority says that any interpretation of the will language other than that made by them defies reason. I have considered that assertion. I still disagree.

The will reflects it was Fritz Mettscher's intent that his estate be transferred to his six children, his only heirs, in substantially equal shares. Subject to disposition of mineral estate interests in and to the entire six quarter sections, he devised a quarter section of land to each child. The will language disposing of mineral estate and surface interests in the six quarter sections is the only language of specific devise or bequest found in the will. Pursuant to the will's residuary clause, all other property of Fritz Mettscher's, after payment of debts and estate administration expenses, passed in equal shares to his children.

It is reasonable and likely that Fritz Mettscher held the view that the principal tangible benefit of mineral ownership ordinarily is realized only when there is production. That understandable view affords logical and sound explanation of his patently expressed intent that each of his children share equally in the oil, gas and minerals produced anywhere upon the six quarter sections. The sole deviation from the reflected intent and plan of equal distribution of the testamentary estate to the six children is the direction that future oil, gas and mineral bonus and rentals are to belong to the child to whom the leased acreage is devised. Is the testamentary intent to distribute the fruits of Fritz Mettscher's estate in six substantially equal shares frustrated with respect to oil, gas and mineral production? I believe not.

The record on appeal discloses no oil and gas lease or any other interest affecting Fritz Mettscher's ownership of the six

quarter sections as of the date he executed his will or as of the date of his death. We assume, as the parties have, fee title to the six quarter sections was in Fritz Mettscher, unencumbered by any outstanding oil, gas, mineral or other interest.

No party has proffered parol evidence or suggested it appropriate to consider any such evidence.

The matter before the trial judge and now before us is construction and interpretation of the order of final settlement entered upon probate of Fritz Mettscher's estate. That order incorporated the will language verbatim. We are afforded the same opportunity as the trial judge to construe and interpret the transfer intended by the will language. *Cf. Palmer v. Brandenburg*, 8 Kan. App. 2d 154, 155, 651 P.2d 961 (1982), *rev. denied* 233 Kan. 1092 (1983).

Whether fractional mineral interests — six undivided one-sixth interests — in and to the Northwest Quarter passed to Fritz Mettscher's children must be gleaned from the will language. There is nothing else to guide us.

As I read the majority opinion, its foundation is that the will language states in essence:

> To my six children, I give the oil, gas and other minerals that may be produced from the Northwest Quarter;
>
> To Martha, I give all bonus and rentals payable under future leases of the Northwest Quarter.

The majority concludes that because the will language recites the transfer to the six Mettscher children of only and nothing other than the oil, gas and minerals that may be produced from the Northwest Quarter and the transfer to Martha of the bonus and rentals payable under leases covering the Northwest Quarter, the interest transferred to Marie and Ida was royalty. I do not agree.

What is the grant to the six children recited by the will language? It is not a grant of royalty — a share of production — to be delivered or paid for as provided under leases of the Northwest Quarter. It is not a grant of a share of royalty. It is a grant of *the* production, the total production. If treated as royalty, an interest held free of production costs, there would be no production or proceeds of production available for payment of production costs except as might be assented to by one or more of the children. Where would the rights to lease, develop and

produce lie? Those rights spring from or are ancillary to mineral interest ownership. They neither spring from nor are they ancillary to the "right" to bonus and rentals. They must lie with whomever holds the right to the oil, gas and other minerals produced. That has to be true particularly where, as here, there is the grant of all production.

Oil, gas and other minerals "in and under," standing alone, creates a mineral interest. 1 Williams and Meyers, Oil and Gas Law § 304.4, p. 473 (1983); *Rutland Savings Bank v. Steele,* 155 Kan. 667, 670, 671, 672, 127 P.2d 471 (1942). *Cf. Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 132, 368 P.2d 19 (1962). The will language says that.

Oil, gas and other minerals *"in and under and that may be produced from,"* standing alone, creates a mineral interest. 1 Williams and Meyers, Oil and Gas Law § 304.5, p. 477 (1983); *Serena v. Rubin,* 146 Kan. 603, 606, 608, 72 P.2d 995 (1937); *Shaffer v. Kansas Farmers Union Royalty Co.,* 146 Kan. 84, 91-92, 69 P.2d 4 (1937). The will language says that.

Oil, gas and other minerals *"that may be produced,"* standing alone, creates a mineral interest under our law. 1 Williams and Meyers, Oil and Gas Law § 304.6, p. 481 (1983); *Brooks v. Mull,* 147 Kan. 740, 741, 78 P.2d 879 (1938); *Palmer v. Brandenburg,* 8 Kan. App. 2d at 159-61. The will language says that.

A devise is a testamentary gift of real property. A bequest is a testamentary gift of personal property. *In re Estate of Williams,* 158 Kan. 734, 738, 150 P.2d 336 (1944). Thus "devise" connotes transfer of a real property interest. A mineral interest is a real property interest. A royalty interest is a personal property interest. *Palmer v. Brandenburg,* 8 Kan. App. 2d at 158-59. The will language says "devise."

Application of the foregoing construction and interpretation principles to the will language convinces me that an undivided one-sixth mineral interest in and to the entire six quarter sections was created in favor of each of Fritz Mettscher's six children by the will language reading:

"I give, *devise* and bequeath *the oil, gas and other minerals in and under and that may be produced* from the hereinafter described [six quarter sections] . . . which I now own to my six children [in equal shares] . . . .

"*[T]he mineral rights herein devised shall be* and include only *the oil, gas or other minerals which may be produced* from said [six quarter sections] . . . ." (Emphasis added.)

Use of the word "only" does not detract from or vary the meaning and effect of the other wording of the last quoted sentence. The word is surplusage. The meaning of the sentence is unaffected by its inclusion or omission.

What is the effect of the remaining pertinent will language, that is,

"[T]he mineral rights herein devised . . . shall not [include] any of the oil, gas or mineral lease rentals, delay rentals or bonuses . . . payable under any leases; . . . all of the rentals, delay rentals and bonuses payable under any leases . . . shall be payable to the person to whom the specific real estate upon which such rentals are paid is . . . given and devised"?

In my view, that language simply severs the "right" to bonus and rentals from the full mineral interest and sets over that "right" to the surface owner or owners of the leased acreage. It renders the mineral interest held by the children as tenants in common nonparticipating as to bonus and rentals.

By the will language, there was a grant to the six children that was a *devise* of the oil, gas and other minerals both *in and under* the lands and *in and under and that may be produced* from the lands. That is the grant of a full mineral interest. Again, as I see it, the other pertinent will language did nothing more than carve out and except from the granted mineral interest the "right" to bonus and rentals and separately grant it to particular children. The fact that the will language says "the mineral rights herein devised shall be and include only the oil, gas or other minerals which may be produced" is of no present material consequence. Under *Brooks* and *Palmer*, and with no Kansas authority to the contrary. of which I am aware, it is established that the grant or reservation of a fractional part or the entirety of "all the oil, gas and minerals that may be produced" creates a mineral interest.

Although *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. at 126-36, is not on all fours in that it involved other language in the instrument and is otherwise factually distinguishable, I find the following from that case apropos to the case before us and supportive of the result I believe we should reach:

"[T]he defendant executed and delivered its special warranty deed to plaintiffs conveying the real estate in fee simple subject to . . . [a] reservation, in the granting clause, which reads:

"'. . . reserving . . . an undivided [fractional] interest in and to all oil, gas or other minerals . . . in or under the said land . . . . The said . . . reservation shall not be participating in bonuses or rentals . . . .'

. . . .

". . . What was the nature of the interest reserved? The answer turns largely upon the construction to be given the reservation. The fundamental rule in construing the effect of written instruments is that the intent and purpose of the parties be determined from an examination of the entire instrument, or as is sometimes stated, from its four corners, that is, all the language used anywhere in the instrument should be taken into consideration and construed in harmony with other provisions. [Citations omitted.]

"The defendant contends the deed reserved an . . . interest in the minerals in place . . . .

"Plaintiffs [contend] . . . that the reservation created a true royalty interest . . . .

. . . .

". . . For purposes here concerned, it may be said that the term 'royalty' has reference to a right to share in production of oil and gas at severance; it is personal property, and does not include a perpetual interest in the oil, gas and other minerals in and under the land. The term 'mineral interest' means an interest in and to oil and gas in and under the land and constitutes present ownership of an interest in real property.

. . . .

". . . *The language, 'in and to all oil, gas and other minerals . . . in and under the said land' is diametrically opposed to the definition of royalty, and to deny its apparent meaning as an estate in land and interpret it to mean 'share of production' only . . . would be irregular and clearly unwarranted.* The language is very similar to deeds of conveyance previously reviewed by this court and held to convey present title to minerals in place [citation omitted], and it is persuasive evidence that minerals in place were reserved. . . .

"The second part of the reservation . . . makes it clear the defendant was not to participate in bonuses or delayed [*sic*] rentals accruing under any lease . . . . *The fact that the reservation expressly stipulated the defendant was not to participate in such payments lends support to the* defendant's *contention that minerals in place were intended to be reserved.*

". . . [A royalty] interest does not carry the right to lease the property for oil and gas development or to join in the execution of such leases [citation omitted], or to participate in bonuses or delayed [*sic*] rentals [citations omitted]. Hence, *had the parties intended the* defendant reserve *only a royalty interest there would have been no necessity to make the reservation nonparticipating as to bonuses and delayed [sic rentals]* . . . . *On the other hand, had the parties intended the* defendant reserve *a fractional interest in minerals in place, the defendant's right to participate in such payments would naturally follow and to entitle the plaintiffs to receive them, it [was] necessary to expressly exclude them from the reservation.* . . .

. . . .

"The district court erred in not finding that the defendant reserved an undivided [fractional] nonparticipating interest in the minerals in place   .   .   .   ." (Emphasis added.)

Marie and Ida were each granted a fractional — an undivided one-sixth — mineral interest in and to the Northwest Quarter subject only to Martha's "right" to receive bonus and rental payments, bargained for payments arising out of and only by reason of future leases. Marie and Ida each received a fractional mineral interest nonparticipating as to bonus and rentals. Each received a fractional interest in and to the right and power to lease, develop and produce, which carries with it the rights incidental thereto including, among others, the rights to reasonable ingress and egress, to explore, to drill and to receive royalty according to the terms of any future leases.

With respect to mineral interest rights, rights arising from an oil and gas lease and the interplay of these rights, it is of value to bear in mind that an oil and gas lease is a hybrid instrument. *Ingram v. Ingram*, 214 Kan. 415, 521 P.2d 254 (1974); *In re Estate of Sellens*, 7 Kan. App. 2d 48, 50, 51, 637 P.2d 483 (1981), *rev. denied* 230 Kan. 818 (1982). It is a license to enter and explore for oil and gas. *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. at 89; *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 150, 40 P.2d 463 (1935); *Gas Co. v. Neosho County*, 75 Kan. 335, 89 Pac. 750 (1907); *In re Estate of Sellens*, 7 Kan. App. 2d at 51. It is a grant with conditions. One of the conditions is a reservation to the lessor of a share in the production — royalty. The right to royalty is reserved out of the lessor's grant. The lessor's right to royalty arises from his mineral interest ownership rather than arising from or originating with the lease. *Cf. In re Estate of Sellens*, 7 Kan. App. 2d at 51.

I infer from the majority opinion that they are significantly impressed by the omission of explicit expression of a grant to the six children of a right of ingress and egress. I am not similarly impressed. I believe the right of ingress and egress is necessarily incidental and ancillary to the rights to explore, develop and produce, rights that I conclude passed to the six children. In *Cosgrove v. Young*, 230 Kan. 705, 642 P.2d 75 (1982), there was no recited grant of right of ingress and egress and it was held a royalty interest was conveyed. In contrast to the will language before us, the instrument involved in *Cosgrove* was entitled

"Contract on Oil and Gas *Royalty*," its granting clause stated "sell, assign and agree to deliver . . . one-half (½) of the *royalty* in Oil and Gas produced upon the . . . land . . ." and no reference was made to oil, gas and other minerals in and under the land. (Emphasis added.) 230 Kan. at 707, 712-713.

Despite the risk of a responsive assertion of immateriality, I proffer to plaintiff's counsel and the majority a line of inquiry. Bonus and rental payments occur only if and when an oil and gas lease is executed. Citing Kansas case authority, you say the grant of a perpetual bare royalty interest fails because of violation of the rule against perpetuities. If that be so, would not Fritz Mettscher's testamentary grant to Martha of bonus and rentals fail for that same reason? As I read the majority opinion, its principal reasoning is that Marie and Ida's purported interest in the Northwest Quarter is a bare royalty interest because bonus and rentals are set apart to Martha. If the rule against perpetuities defeats the grant to Martha of bonus and rentals, as your case authority and reasoning logically must require, do you not lose the primary basis for your conclusion that Marie and Ida received only a bare royalty interest? If the interest Marie and Ida received was not simply a bare royalty interest, is it not correct that the principle that the rule against perpetuities invalidates a grant of a bare royalty interest is not controlling in this case?

Since the opinions in this appeal are to be published, I wish to add some observations.

In cases such as this, it is appropriate to bear in mind three rather basic matters. Ordinarily it is a lessee who engages in exploration, development and production, although the mineral interest owner may personally undertake exploration, development and production at his own cost. In general, bonus is the consideration paid by a lessee for the lessor's execution of an oil and gas lease, a license to explore, develop and produce, and pursuant to which production, if achieved, is shared on an agreed basis with the lessor's share free of production costs. Such lessor's share is usually referred to as royalty. 8 Williams and Meyers, Oil and Gas Law, pp. 65, 656 (1982); *In re Estate of Sellens,* 7 Kan. App. 2d at 51. In general, delay rental is a sum of money payable to the lessor by a lessee for the privilege of deferring the commencement of drilling operations or the com-

mencement of production during the primary term of the lease. 8 Williams and Meyers, Oil and Gas Law, p. 175 (1982).

Because I question the usage in the majority opinion of *Magnusson v. Colorado Oil & Gas Corp.*, 183 Kan. 568, 575, 331 P.2d 577 (1958), and *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 91-92, 69 P.2d 4 (1937), as authority for the proposition for which they are cited, I leave it to the reader to evaluate the precedential accuracy and value of the citations appearing in the opinions being filed in this case.

Left for consideration on another day in some similar case is the proposition found in *Singer Company v. Makad, Inc.*, 213 Kan. 725, 729, 518 P.2d 493 (1974), where it is said:

"[T]he recent trend among legal authorities is to relax the harsh and inflexible application of the [rule against perpetuities] and . . . courts are now disposed to follow one of several tenable theories which will avoid remoreless application of the rule and give effect to the intention of the parties. . . .

"[O]ur own cases reflect the modern tendency to temper the rule where its rigid application would do violence to the disposition of property."

See also *Cosgrove v. Young*, 230 Kan. at 721-725 (dissent).

In his briefs and arguments presented to the trial court and on appeal, plaintiff has cited an unpublished opinion of this court as precedent. This is plain violation of Supreme Court Rule 7.04, 232 Kan. cxvi, that cannot be condoned. Is published rebuke the only available penalty? Perhaps so.

I would reverse.